CHRISTOPHER FROST (SBN 200336)
chris@frostllp.com
LAWRENCE J.H. LIU (SBN 312115)
lawrence@frostllp.com
BENJAMIN GRUSH (SBN 335550)
bgrush@frostllp.com
KEVIN SALMASSY (SBN 357161)
kevin1@frostllp.com
FROST LLP
10960 Wilshire Boulevard, Suite 2100
Los Angeles, California 90024
Telephone: (424) 254-0441
Facsimile: (424) 600-8504

Attorneys for Plaintiffs SHANGJIN CHEN
and DANHONG CHEN

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| SHANGJIN CHEN, an individual; and DANHONG CHEN, an individual,, | Case No. 2:23-cv-10874-SPG-AS |
| | *Hon. Sherilyn Peace Garnett* |
| Plaintiffs, | **PLAINTIFFS' REPLY TO DEFENDANT JPMORGAN CHASE BANK, N.A.'S OPPOSITION TO MOTION FOR LEAVE TO FILE FOURTH AMENDED SUPPLEMENTAL COMPLAINT** |
| vs. | |
| JPMORGAN CHASE BANK, N.A., a New York corporation; BANK OF AMERICA, N.A., a Delaware corporation; MERRILL LYNCH, PIERCE, FENNER & SMITH INC., a Delaware corporation; and DOES 1 through 10, inclusive,, | |
| | Date:     August 27, 2025 |
| | Time:     1:30 p.m. |
| | Crtrm.:   5C |
| Defendants. | |
| | Trial Date:          N/A |

61749.1

# **<u>TABLE OF CONTENTS</u>**

**<u>Page</u>**

I.   INTRODUCTION ................................................................................. 1

II.  ARGUMENT .................................................................................... 2

    A.   Chase's Untimely Opposition Should Be Stricken ................................... 2

    B.   Plaintiffs Were Diligent In Seeking Leave to Amend ............................. 3

    C.   Any Lack of Diligence Was Based on Prior Counsel's Gross Negligence ............................................................................................ 3

    D.   Defendants Fail to Demonstrate Any Prejudice ....................................... 9

    E.   Plaintiffs' EFTA Claims Are Meritorious and Not Futile ..................... 10

        1.   Plaintiffs' EFTA Claims Are Timely ........................................... 10

        2.   Plaintiffs' Disputed Transactions Are Not Excluded Under Regulation E ............................................................................ 13

III. CONCLUSION ............................................................................. 15

61749.1

i

PLAINTIFFS' REPLY TO DEFENDANT JPMORGAN CHASE BANK, N.A.'S OPPOSITION TO MOTION FOR LEAVE TO FILE FOURTH AMENDED SUPPLEMENTAL COMPLAINT

1

# <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

**Federal Cases**

4

5

*Allstate Northbrook Indem. Co. v. Madelline Dayana Flores Delgado*,
No. 2:24-CV-03934-SPG-MRW, 2024 WL 3464171 (C.D. Cal.
2024) (J. Garnett)............................................................................................2

6

7

*Camacho v. JPMorgan Chase Bank*,
No. 5:14-CV-04048-EJD, 2015 WL 5262022 (N.D. Cal. 2015) ................ 12, 13

8

9

*CFPB v. Early Warning Services, LLC, et al.*
(D. Ariz. Case No. 2:24-cv-03652-SMB), ECF No. 1 [Compl. ] .......................6

10

11

*In re Cir. Breaker Litig.*,
175 F.R.D. 547 (C.D. Cal. 1997).......................................................................10

12

13

*Cmty. Dental Servs. v. Tani*,
282 F.3d 1164 (9th Cir. 2002) ............................................................................7

14

15

*DCD Programs, Ltd. v. Leighton*,
833 F.2d 183 (9th Cir. 1987) ..............................................................................9

16

17

*Feller v. Petty*,
No. 18-CV-03460 (SJO), 2020 WL 2477679 (C.D. Cal. 2020) ......................4, 5

18

19

*Greenfield v. Am. W. Airlines, Inc.*,
No. C03-05183 MHP, 2004 WL 2600135 (N.D. Cal. 2004) ..............................9

20

21

*Gunter v. United Fed. Credit Union*,
No. 3:15-cv-00483-MMD-WGC, 2018 WL 4286181 (D. Nev. 2018).............. 13

22

23

*Kanji v. Bank of Am., N.A.*,
No. CV 20-3820-RSWL-SK, 2020 WL 8175548 (C.D. Cal. 2020) ................. 14

24

*Lal v. California*,
610 F.3d 518 (9th Cir. 2010) ..............................................................................7

25

26

*Lofton v. United States*,
No. 2:23-CV-09088-SPG-AS, 2025 WL 1675812 (C.D. Cal. 2025)
(J. Garnett) ..........................................................................................................2

27

28

PLAINTIFFS' REPLY TO DEFENDANT JPMORGAN CHASE BANK, N.A.'S OPPOSITION TO MOTION FOR
LEAVE TO FILE FOURTH AMENDED SUPPLEMENTAL COMPLAINT

*Matrix Motor Co., Inc. v. Toyota Jidosha Kabushiki Kaisha*,
    218 F.R.D. 667 (C.D. Cal. 2003) ................................................................. 4, 5, 6, 7

*Mighty Enters. Inc. v. She Hong Indus. Co.*,
    No. 214CV06516ODWGJS, 2015 WL 13764130 (C.D. Cal. 2015) ................... 7

*Munchkin, Inc. v. Luv N' Care, Ltd.*,
    No. CV 13-06787 JEM, 2014 WL 12560778 (C.D. Cal. 2014) ......................... 9

*Nissou-Rabban v. Cap. One Bank (USA), N.A.*,
    285 F. Supp. 3d 1136 (S.D. Cal. 2018) ............................................................ 9

*Pelletier v. Pac. WebWorks, Inc.*,
    No. CIV S-09-3503 KJM, 2012 WL 43281 (E.D. Cal. 2012) ......................... 12

*Perez v. JPMorgan Chase Bank*,
    No. CV 16-1597-R, 2016 WL 9175668 (C.D. Cal. 2016) ............................... 11

*Ramirez v. Baxter Credit Union*,
    No. 16-CV-03765-SI, 2017 WL 1064991 (N.D. Cal. 2017) ............................ 10

*Repay v. Bank of Am., N.A.*,
    No. 12 CV 10228, 2013 WL 6224641 (N.D. Ill. 2013) ................................... 13

*Victor Valley Fam. Res. Ctr. v. City of Hesperia*,
    No. EDCV1600903ABSPX, 2017 WL 11629302 (C.D. Cal. 2017) ................... 2

*Widjaja v. JPMorgan Chase Bank, N.A.*,
    No. CV 19-7825-MWF-AFM, 2019 WL 8108716 (C.D. Cal. 2019) .......... 11, 12

*Wike v. Vertrue, Inc.*,
    566 F.3d 590 (6th Cir. 2009) ................................................................... 12, 13

*Williams v. United Elec.*,
    No. 2-20-cv-09957-SSS-MRWx, 2023 WL 4155405 (C.D. Cal.
    2023) .............................................................................................................. 3

**Federal Statutes**

15 U.S.C. § 1693a .................................................................................. 12, 13

15 U.S.C. § 1693e ....................................................................................... 12

15 U.S.C. § 1693f ......................................................................................... 3

**State Statutes**

California Commercial Code § 11201 ....................................................................... 14

Electronic Fund Transfer Act .................................................................................... 2

**Rules**

Local Rule 7-9 ........................................................................................................... 2

Local Rule 7-12 ......................................................................................................... 2

Local Rule 7-13 ......................................................................................................... 2

Local Rule 83-7 ......................................................................................................... 2

Rule 16(b) ............................................................................................................... 4, 7

**Regulations**

12 C.F.R. § 1005.3(b) ............................................................................................... 14

12 C.F.R. § 1005.3(c) ............................................................................................... 14

12 C.F.R. § 1005.11(d) ............................................................................................... 3

**Other Authorities**

U.S. Sen. Comm. on Banking, Housing, and Urban Affairs, Press
    Release (Mar. 4, 2025),
    https://www.banking.senate.gov/newsroom/minority/ahead-of-
    speech-trump-abandons-cfpb-enforcement-cases-leaving-american-
    consumers-high-and-dry ....................................................................................... 6

61749.1

iv

PLAINTIFFS' REPLY TO DEFENDANT JPMORGAN CHASE BANK, N.A.'S OPPOSITION TO MOTION FOR
LEAVE TO FILE FOURTH AMENDED SUPPLEMENTAL COMPLAINT

1

2 <u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

3 **I.    <u>INTRODUCTION</u>[1]**

4       Justice and compelling public interests require granting Plaintiffs Shangjin and

5 Danhong Chen leave to file their Fourth Supplemental and Amended Complaint

6 ("4SAC"). As ordinary consumers, this is their only means to hold Defendants Bank

7 of America ("BANA"), JPMorgan Chase ("Chase"), and Merrill Lynch ("Merrill")

8 accountable for violating their statutory duties under the Electronic Fund Transfer Act

9 ("EFTA")—legislation designed to protect consumers by requiring financial

10 institutions to safeguard accounts and reasonably investigate fraud claims, especially

11 in today's digital banking environment.

12       Plaintiffs have shown good cause. They acted diligently once it became clear

13 Defendants would not provide the required explanations or supporting documents for

14 their fraud claims. Defendants do not dispute the merits or facts in the 4SAC, instead

15 resorting to technical arguments based on mischaracterizations of the law and the

16 allegations. Having already lost their savings and investments to identity theft,

17 Plaintiffs should not be victimized again due to their Prior Counsel's gross negligence

18 in failing to assert these claims earlier. Defendants' claims of prejudice are unfounded.

19 With a combined market cap exceeding $1 trillion, it is implausible that three of the

20 world's largest financial institutions would be burdened by responding to amended

21 claims while pleadings remain at issue.

22       Nor do Defendants' futility arguments hold. Plaintiffs' claims are timely: most

23 fraudulent transactions occurred within one year of filing, and each non-recurring

24 unauthorized transfer resets the statute of limitations. Chase misstates Plaintiffs'

25 allegations, misconstrues statutory exclusions under Regulation E, and offers no

26

27

28 ─────────────────────
[1] Plaintiffs incorporate by reference their concurrently-filed Reply to BANA's
Opposition to Motion for Leave and all facts and arguments contained therein.

─────────────────────
PLAINTIFFS' REPLY TO DEFENDANT JPMORGAN CHASE BANK, N.A.'S OPPOSITION TO MOTION FOR
LEAVE TO FILE FOURTH AMENDED SUPPLEMENTAL COMPLAINT

authority showing such exclusions apply or that Defendants' refusal to produce investigative documents cannot support a cause of action under the EFTA.

For these reasons, Plaintiffs' Motion for Leave should be granted.

## II.   **ARGUMENT**

### A.   **Chase's Untimely Opposition Should Be Stricken**

"Local Rule 7-9 provides that a party opposing a motion must file its opposition brief no later than 21 days in advance of the noticed motion hearing." *Allstate Northbrook Indem. Co. v. Madelline Dayana Flores Delgado*, No. 2:24-CV-03934-SPG-MRW, 2024 WL 3464171, at *1 (C.D. Cal. 2024) (J. Garnett) (citing L.R. 7-9). "Pursuant to Local Rule 7-12, '[t]he failure to file any required document, or the failure to file it within the deadline, may be deemed consent to the granting or denial of the motion.'" *Lofton v. United States*, No. 2:23-CV-09088-SPG-AS, 2025 WL 1675812, at *1 (C.D. Cal. 2025) (J. Garnett) (citing L.R. 7-12); *see also Victor Valley Fam. Res. Ctr. v. City of Hesperia*, No. EDCV1600903ABSPX, 2017 WL 11629302, at *2 (C.D. Cal. 2017) (defendant's failure to timely file opposition deemed consent to plaintiff's motion for leave to amend). A party who files opposition papers after the deadline "also **_shall be_** subject to the sanctions of L.R. 83-7 and the F.R.Civ.P." L.R. 7-13 (emphasis added).

Chase filed its Opposition on August 11, 2025, five days after its deadline. Plaintiffs' Motion for Leave was filed on July 24, 2025, and hearing was set for August 27, 2025. ECF No. 90. Thus, Defendants' opposition briefs were due on August 6, 2025.[2] Based on Chase's late filing, Plaintiffs are substantially prejudiced by having

---

[2] On July 30, 2025, Defendants filed a Joint *Ex Parte* Application to continue the hearing date while seeking a unilateral one-week extension to their briefing deadline. ECF No. 91. To avoid wasteful motion practice, Plaintiffs proposed to stipulate to continue the hearing two weeks while providing additional one-week extensions to both sides' briefing deadlines. Defendants agreed. Thereafter, the parties filed a Joint Stipulation to continue the hearing and briefing deadlines, and Defendants withdrew their *Ex Parte* Application. ECF Nos. 92, 93. To date, however, the Court has not

61749.1                                      2

to file this Reply on just two days' notice to comply with their August 13th deadline. Accordingly, Chase's Opposition is untimely and should be stricken or disregarded.

## B.    Plaintiffs Were Diligent In Seeking Leave to Amend

New facts giving rise to additional claims under the EFTA surfaced only recently when Defendants failed to provide documents supporting their investigations into Plaintiffs' fraud claims. 15 U.S.C. § 1693f(d); 12 C.F.R. § 1005.11(d)(1). In particular, none of the Defendants have meaningfully responded to Plaintiffs' written letters requesting such documents despite multiple requests. Liu Decl. ¶ 25 (ECF No. 90-1).

That Plaintiffs required two months to find new counsel, or that Plaintiffs' new counsel required three months to get up to speed researching complex legal and factual issues, while simultaneously: (1) filing a Third Amended Complaint ("TAC") that complied with the Court's orders (ECF No. 83); (2) opposing BANA's premature Motion to Dismiss (ECF No. 86); and (3) meeting and conferring extensively in good faith on the potential Motion for Leave, does not negate a finding that Plaintiffs were diligent. The Court's Order granting Plaintiffs' leave to file the TAC was clear that leave to amend was limited to specific causes of action only. ECF No. 76. Plaintiffs met and conferred with Defendants on stipulating to further amendments that would include the EFTA claims, but Defendants refused. Liu Decl. ¶¶ 15-20.

## C.    Any Lack of Diligence Was Based on Prior Counsel's Gross Negligence

"Where the attorney has engaged in gross negligence, accountability is not placed on the client." *Williams v. United Elec.*, No. 2-20-cv-09957-SSS-MRWx, 2023 WL 4155405, at *2 (C.D. Cal. 2023), *reconsideration denied sub nom. Williams v. United Elec. Radio & Mach. Workers of Am.*, 2023 WL 5423024 (C.D. Cal. 2023) (citing *Scheurer v. United States*, No. 3:21-cv-01053-LL-AHG, 2023 WL 2876134, at

---

entered an Order continuing the hearing or extending the briefing deadlines. BANA filed its Opposition on August 6, 2025. ECF No. 94.

61749.1

PLAINTIFFS' REPLY TO DEFENDANT JPMORGAN CHASE BANK, N.A.'S OPPOSITION TO MOTION FOR LEAVE TO FILE FOURTH AMENDED SUPPLEMENTAL COMPLAINT

1  \* (S.D. Cal. 2023); *Matrix Motor Co., Inc. v. Toyota Jidosha Kabushiki Kaisha*, 218

2  F.R.D. 667, 674 (C.D. Cal. 2003)).

3       The standard under Rule 16(b) "is neither 'extraordinary circumstances' nor

4  'excusable neglect,' but '**good cause**.'" *Matrix Motor Co. v. Toyota Jidosha Kabushiki*

5  *Kaisha*, 218 F.R.D. 667, 674 (C.D. Cal. 2003) ("*Matrix Motor*") (emphasis added). If

6  the plaintiff "has shown that its lawyers were guilty of ***gross negligence or***

7  ***abandonment***, then, … a finding of extraordinary circumstances ***or good cause***,

8  justifying a modification of the scheduling order, would be warranted. *Id.* (emphasis

9  added). While Plaintiffs contend that their Prior Counsel's acts rose to the heightened

10  levels of both "extraordinary circumstances" and a "virtual abandonment," Plaintiffs'

11  burden to support modifying the scheduling order under Rule 16(b) is only to show

12  "good cause," which may be established by "gross negligence ***or*** abandonment."

13       Chase relies on several cases cited by Plaintiffs in their opening Motion

14  regarding the standard for gross negligence. While some of these cases did not find

15  gross negligence sufficient to warrant modifying a scheduling order, the facts are

16  distinguishable on many important grounds. In *Feller v. Petty*, No. 18-CV-03460

17  (SJO), 2020 WL 2477679, at \*3 (C.D. Cal. 2020), the Court did not find gross

18  negligence by the counterclaimant's (Petty) prior attorney to warrant good cause to

19  permit leave to file a counterclaim after the deadline. There, the court specifically

20  found that Petty had not been diligent where his prior attorney had informed him of his

21  intent to withdraw from the case and provided notice to the Petty two months later. The

22  prior counsel stated in his motion to withdraw that there was a breakdown of the

23  attorney-client relationship based on the Petty's failure to compensate or communicate

24  with his attorney—*allegations that the plaintiff did not deny. Id.* at \*3. Furthermore,

25  after being informed of his prior attorney's intent to withdraw, Petty did not attempt to

26  repair his relationship with his prior attorney or seek new counsel over the next eight

27  to ten months. The court thus stated that it "c[ould] only attribute this to his lack of

28  diligence in prosecuting the counterclaim." *Id.* Finally, the court found that there may

61749.1                                      4

FROST

1   have been reasonable strategic grounds for the prior attorney to decide not to amend

2   the Petty's counterclaims, and even if the omission was a mistake, it did not rise to the

3   level of gross negligence or abandonment. *Id.* at \*3-4.

4        None of those facts are present here. Prior Counsel did not inform Plaintiffs of

5   a breakdown in attorney-client relationship and there is no evidence that Plaintiffs had

6   ceased communicating with Prior Counsel. Plaintiffs only discovered that their Prior

7   Counsel was mishandling the case in March 2025 and immediately found new counsel

8   two months later. Chen Decl. ¶¶ 35, 39 (ECF No. 90-11). Lastly, there could be no

9   excuse or justification for Prior Counsel's failure to seek leave to modify the

10  scheduling order earlier given that they had not sufficiently assessed the EFTA claims

11  and failed to conduct discovery. Such omissions can only be attributed to a finding that

12  they had been grossly negligent.

13       As with BANA, Chase also relies on *Matrix Motor* in arguing that an attorney's

14  failure to perform discovery or keep his client appraised of deadlines is insufficient to

15  establish gross negligence. That case, however, is factually distinguishable on many

16  grounds. First, *Matrix Motor* involved a trademark dispute between two sophisticated

17  corporate entities. The plaintiff (Matrix) was simultaneously represented by both a solo

18  attorney as well as a large national law firm (Buchalter) who was lead counsel in the

19  case. *Id.* at 669. The court did not find that prior counsel Buchalter had been grossly

20  negligent where the record reflected that its failure to comply with discovery

21  obligations was due to an inability to communicate with the client. *Id.* at 675.

22       Second, Matrix claimed that it had asked its prior counsel about the status of

23  discovery on "three or four occasions" over a four-month span but was only provided

24  vague responses that discovery was "in the works" or "in progress." *Id.* Matrix,

25  however, failed to provide the court with any information regarding the dates these

26  conversations occurred, or letters or internal memoranda confirming such

27  communications even took place. *Id.* The court noted that Matrix's CEO was "a

28  prudent businessman," and that if he had been "very concerned" about the progress of

61749.1                                          5

the action but received only "vague responses," then he "would surely, ... have taken steps to create a written record of his concerns." *Id.* "If, moreover, his attorney refused to meet with company representatives, he would have taken affirmative steps to locate new counsel. None of these things, however, was done." *Id.* Third, in refusing to attribute gross negligence to the plaintiff's prior counsel, the court found "no evidence that Matrix took action to protect its rights," but rather, it "failed to return [its prior counsel's] calls, failed to pay his bills, and failed to cooperate with him in the prosecution of the case." *Id.* at 676.

Here, Plaintiffs are not sophisticated business entities—they are just ordinary customers of Defendants who are among the largest U.S. financial institutions and who have been previously implicated for the same fraud and lack of accountability issues in a recent CFPB lawsuit. *See CFPB v. Early Warning Services, LLC, et al.* (D. Ariz. Case No. 2:24-cv-03652-SMB), ECF No. 1 [Compl. ¶¶ 122-230].[3] Plaintiffs are vastly outmatched by big bank Defendants' resources and are even more vulnerable due to their limited English proficiency and lack of familiarity with U.S. litigation proceedings. Chen Decl. ¶ 21. They have not been represented by big national law firms such as the plaintiff in *Matrix Motor* or Defendants in this case.

Unlike the plaintiff in *Matrix Motor*, Plaintiffs also provided sworn testimony identifying exact dates when their Prior Counsel affirmatively misrepresented the status of discovery and case developments, such as: (i) an email on September 13, 2024, stating that had "taken proactive steps by serving discovery" and that such written discovery would be sufficient to "hold the banks accountable" (Chen Decl. ¶ 30); (ii) an email on April 24, 2025, misrepresenting that "the news is generally positive" following the Court's Order dismissing the SAC (Chen Decl. ¶ 37); and (iii)

---

[3] *See also* U.S. Sen. Comm. on Banking, Housing, and Urban Affairs, Press Release (Mar. 4, 2025), https://www.banking.senate.gov/newsroom/minority/ahead-of-speech-trump-abandons-cfpb-enforcement-cases-leaving-american-consumers-high-and-dry.

in the same April 24th email, stating that their new counsel could file a motion to
compel discovery after the cut-off date had passed (Liu Decl. ¶ 46).[4] Prior Counsel's
statements well exceeded the "vague comments that discovery … was 'in the works'"
as in *Matrix Motor*, and are more consistent with the deliberate misrepresentations in
*Tani*, which "depriv[ed] [Plaintiffs] of the opportunity to take action to preserve [their]
rights." *Matrix Motor*, 218 F.R.D. at 675; *Tani*, 282 F.3d at 1171.

In *Mighty Enters. Inc. v. She Hong Indus. Co.*, No. 214CV06516ODWGJS, 2015
WL 13764130, at *3 (C.D. Cal. 2015), the plaintiff's prior counsel failed to include
trademark infringement claims. After new counsel was substituted into the case, the
plaintiff moved for leave to amend her complaint and for a sixty-day extension of trial
the trial date and pre-trial deadlines. Aside from failing to assert such claims earlier,
there were no other facts in that case that could support a finding of gross negligence.
Whereas here, there are countless examples of Prior Counsel's gross negligence and
trial and pretrial dates are currently vacated. Chase also attempts to distinguish the
gross negligence found in *Cmty. Dental Servs. v. Tani*, 282 F.3d 1164, 1168 (9th Cir.
2002) and *Lal v. California*, 610 F.3d 518, 520 (9th Cir. 2010). Both cases involved
requests for relief from *judgment* under Rule 60(b)(6), which required a finding of
"extraordinary negligence"—a higher standard than "good cause" required under Rule
16(b) for modification of a *scheduling order* as explained above.

Notwithstanding Prior Counsel's gross negligence, Plaintiffs were otherwise
diligent in the prosecution of this case. Plaintiffs stayed in constant contact with their
Prior Counsel to inquire about the status of the case and their specific obligations, such
as providing documents, information, and even available dates for in-person
depositions. *See* Chen Decl. ¶¶ 23-25, 31, 34. Once Plaintiffs began to suspect Prior
Counsel was misleading them, they immediately sought new counsel. Chen Decl. ¶¶

---

[4] To avoid waiving attorney-client privilege and the work product doctrine, Plaintiffs
are willing to provide such communications to the Court for *in-camera* review.

61749.1

PLAINTIFFS' REPLY TO DEFENDANT JPMORGAN CHASE BANK, N.A.'S OPPOSITION TO MOTION FOR
LEAVE TO FILE FOURTH AMENDED SUPPLEMENTAL COMPLAINT

35, 39. Upon FROST's substitution, Plaintiffs increased their diligence by curing deficiencies in the pleadings and seeking to reopen discovery. Liu Decl. ¶¶ 2-5.

Finally, while neither "virtual abandonment" nor "extraordinary circumstances" are the requisite standards, Prior Counsel's acts were clearly egregious enough to rise to these levels. Following the March 5, 2024 Scheduling Order that had set the September 30, 2024 discovery cutoff (ECF No. 20-1), Prior Counsel conducted *zero* discovery until August 30, 2024, reflecting a virtual abandonment of its obligations for the critical five-month fact discovery period—a fact that BANA itself has acknowledged in its recent Motion to Dismiss. *See* Liu Decl. ¶ 28; ECF No. 85, n.2 ["Plaintiffs made no attempt to participate in discovery until … August 30, 2024."]. Following the Order dismissing the SAC, Prior Counsel also prematurely abandoned the case on April 24, 2025, by sending an email to Plaintiffs containing their incomplete case file and a misleading case summary, and afterwards, performing *no additional work* whatsoever on the case—including Plaintiffs' TAC that was due on May 12, 2025. Liu Decl. ¶¶ 44, 49; Chen Decl. ¶ 36.

Chase mischaracterize Prior Counsel's failures as intentional, strategic decisions Opp. at 6:22-25. Prior Counsel's blatant misrepresentation to Plaintiffs that reopening discovery would not be fruitful because "documents and other evidence from Defendants would not be necessarily helpful anyway" does not support this. The evidence taken in proper context, however, clearly shows that Prior Counsel, consistent with their pattern and practice, deliberately lied to cover up for their negligence *after* they had already missed the deadline and attempted to justify their mistake. *See* Chen Decl. ¶ 35; Liu Decl. ¶ 39. Moreover, Prior Counsel's awareness of *some* facts to support the EFTA claims does not imply that it made a strategic decision not to pursue such claims earlier. As explained, Defendants' documented refusals to provide explanation and records of their investigation conclusions surfaced only recently, and in any event, there is no evidence that Prior Counsel had intentionally decided against

61749.1

8

PLAINTIFFS' REPLY TO DEFENDANT JPMORGAN CHASE BANK, N.A.'S OPPOSITION TO MOTION FOR LEAVE TO FILE FOURTH AMENDED SUPPLEMENTAL COMPLAINT

pursuing such claims. By reasonably relying on their Prior Counsel's false and self-serving advice, Plaintiffs were deprived of any opportunity to act more diligently.

### D.    Defendants Fail to Demonstrate Any Prejudice

"The party opposing amendment [who] bears the burden of showing prejudice." *DCD Programs, Ltd. v. Leighton*, 833 F.2d 183, 187 (9th Cir. 1987). Chase's only claim of prejudice is that it will need to file an additional responsive pleading and engage in additional discovery. Neither rises to the level of undue prejudice sufficient to overcome the liberal policy of granting leave to amend. *See Nissou-Rabban v. Cap. One Bank (USA), N.A.*, 285 F. Supp. 3d 1136, 1145 (S.D. Cal. 2018) (on leave to amend, "the expenditure of additional monies or time do not constitute undue prejudice."); *Munchkin, Inc. v. Luv N' Care, Ltd.*, No. CV 13-06787 JEM, 2014 WL 12560778, at *2 (C.D. Cal. 2014) ("The mere fact that more work may be involved does not constitute prejudice that can prevent amendment.").

First, Chase's argument regarding prejudice for having to file an additional responsive pleading is without merit. The parties discussed BANA's anticipated motion to dismiss the TAC and Plaintiffs' intention to move for leave to file the Fourth Amended Complaint during the same call. Liu Decl. ¶ 15. Plaintiffs asked whether Defendants would stipulate to Plaintiffs' filing the Fourth Amended Complaint or extending the deadline for Defendants to respond to the TAC. Liu Decl. ¶ 16. After subsequent inquiries by Plaintiffs over multiple days, Defendants finally informed Plaintiffs that it would not stipulate to either option, and Chase filed its Answer to the TAC several days early in an obvious attempt to manufacture prejudice. Liu Decl. ¶¶ 16-17, 19-20. Chase's claimed prejudice from additional pleadings is thus a problem of its own creation and should not serve as a basis to deny leave to amend.

Second, Chase suggests that it will be prejudiced by engaging in further expert discovery is likewise without merit. Courts have routinely found that the need for additional discovery does not support a finding of prejudice. *See e.g., Greenfield v. Am. W. Airlines, Inc.,* No. C03-05183 MHP, 2004 WL 2600135, at *4 (N.D. Cal. 2004)

("To the extent that limited additional discovery may be required, the need for additional discovery is insufficient by itself to deny a proposed amended pleading based on prejudice."); *In re Cir. Breaker Litig.,* 175 F.R.D. 547, 551 (C.D. Cal. 1997) ("The need for additional discovery is insufficient by itself to deny a proposed amended pleading."). The fact that Plaintiffs' EFTA claims are centered around the same operative facts and similar legal issues as the existing Division 11 claims undermines Chase's claims of prejudice. Indeed, Chase does not contend how or why (*i.e.*, for what particular issues) it will need to engage in additional expert discovery, nor does it claim that it will need to retain a different expert or prepare a new report. Expert discovery is still open and Chase maintains the option to do so. Thus, any prejudice imposed by additional expert discovery with respect to the EFTA claims by Chase is purely speculative and does not provide a sufficient justification for denying leave to amend.

### E.    Plaintiffs' EFTA Claims Are Meritorious and Not Futile

#### 1.    Plaintiffs' EFTA Claims Are Timely

"An action under Regulation E may be brought within one year from the date of the occurrence of the violation." *Ramirez v. Baxter Credit Union*, No. 16-CV-03765-SI, 2017 WL 1064991, at *7 (N.D. Cal. 2017) (quoting 15 U.S.C. § 1693m(g)) (citation modified).

Defendants argue that Plaintiffs' claims are barred by the one-year statute of limitations because the fraudulent activity for Shangjin occurred as early as October 2022, and for Danhong, on April 2023. First, Defendants do not dispute that the EFTA claims are subject to the relation-back doctrine and thus relates back to the date of the original Complaint filed on November 22, 2023. *See* Mot. at 23:12-24.6; ECF No. 1. Defendants argue that Shangin's claims are time-barred because the statute of limitations begins to run at the time of the first unauthorized transaction on his accounts, which occurred more than one year before the filing of the Complaint. *See* Opp. at 11:8-11. Chase's reasoning is incorrect. "The statute of limitations accrues as to *each transaction* when it is paid and is subsequently reported on the following

monthly statement." *Perez v. JPMorgan Chase Bank*, No. CV 16-1597-R, 2016 WL 9175668, at *1 (C.D. Cal. 2016).

An analogous Central District case involving Chase, *Widjaja v. JPMorgan Chase Bank, N.A.*, No. CV 19-7825-MWF-AFM, 2019 WL 8108716, at *6 (C.D. Cal. 2019), is directly on point. There, the plaintiff Widjaja was a foreign national who maintained bank accounts in California that she rarely ever used. Beginning in October 2017, she became a victim of banking fraud due to a series of unauthorized withdrawals and charges on her Chase bank account. *Id.* at *2. Having spent most of her time overseas with limited access to her banking accounts, however, Widjaja did not immediately discover the fraud and only reported it to Chase in March 2019. When Chase refused to reimburse her for the unauthorized transfers, she filed suit in June 2019. *Id.* at *5. Chase similarly argued that all of Widjaja's claims were barred by the one-year statute of limitations under the EFTA because the first unauthorized charges began more than a year before the filing of her complaint. Citing a list of cases, however, the court disagreed:

> **First, the Court determines that Chase's argument that the one-year limitation is triggered by the initial <u>unauthorized</u> transfer is incorrect, in cases, such as this, that do not deal with <u>preauthorized</u> transfers.** As Plaintiff points out, <u>most of the cases cited by Chase for this proposition deal with preauthorized transfers</u>, where, "rather than alleging a series of wrongful acts, Plaintiff has alleged a wrongful omission: failing to obtain written authorization for the series of transfers."
>
> **Here, by contrast, "the Court is faced with purely <u>unauthorized</u> transfers," and therefore "the one-year time limitation is triggered by each individual transfer."**
>
> Accordingly, Plaintiff's claims survive to the extent they are premised on Unauthorized Transactions which took place less than one year prior to her filing of the Complaint.

61749.1

11

PLAINTIFFS' REPLY TO DEFENDANT JPMORGAN CHASE BANK, N.A.'S OPPOSITION TO MOTION FOR LEAVE TO FILE FOURTH AMENDED SUPPLEMENTAL COMPLAINT

1  *Id.* at *6 (citations omitted, emphasis added).

2      The fact that Chase has previously raised the same exact argument under nearly

3  identical circumstances in an earlier case in this district—*and was rejected*, speaks to

4  the frivolity of their argument here.

5      Similarly here, Chase's sole cited case, *Camacho v. JPMorgan Chase Bank*, No.

6  5:14-CV-04048-EJD, 2015 WL 5262022, at *4 (N.D. Cal. 2015), dealt exclusively

7  with recurring, "*preauthorized* electronic fund transfers," defined as electronic fund

8  transfers ("EFTs") "*authorized in advance* to *recur* at substantially regular intervals."

9  15 U.S.C. § 1693a(10) (emphasis added).[5]  In *Camacho*, 2015 WL 5262022, a case

10  that was already considered and distinguished by the court in *Widjaja*, a plaintiff sued

11  Chase for *stopping* recurring preauthorized payment transfers to a decedent's life

12  insurance policy. The court expressly analyzed such stoppage of recurring payment

13  transfers under 15 U.S.C. § 1693e, which governs "Preauthorized transfers," and noted

14  that the case was somewhat distinct in that "it involves a transfer that never actually

15  occurred but allegedly should have." *Id.* at *2, 5. Based on the *recurring* nature of such

16  preauthorized transfers, the court thus held that § 1693m(g) requires such claims "be

17  filed within one year of the date of the first *recurring* transfer." *Id.* at *4.

18      Each of the cases cited in *Camacho* also shows that the "first transfer" rule was

19  intended to apply specifically to preauthorized EFTs under 15 U.S.C. § 1693e. *See*

20  *Wike v. Vertrue, Inc.*, 566 F.3d 590 (6th Cir. 2009); *Pelletier v. Pac. WebWorks, Inc.*,

25  [5] "In a bill-payment system, for example, if the consumer authorizes a financial

26  institution to make monthly payments to a payee by means of EFTs, and the payments take place without further action by the consumer, the payments are preauthorized

27  EFTs. In contrast, if the consumer must take action each month to initiate a payment (such as by entering instructions on a touch-tone telephone or home computer), the

28  payments are not preauthorized EFTs." 12 C.F.R. pt. 1005, Supp. I, cmt. 2(k)-1.

61749.1

12

No. CIV S-09-3503 KJM, 2012 WL 43281, at *6 (E.D. Cal. 2012); *Repay v. Bank of Am., N.A.*, No. 12 CV 10228, 2013 WL 6224641, at *5 (N.D. Ill. 2013).[6]

Conversely here, Plaintiffs' disputed transactions are not based on *preauthorized* EFTs that might otherwise be subject to the "first transfer" rule in *Camacho* or *Wike*— *e.g.*, payments billed at recurring intervals. Rather, Plaintiffs' claims involve "*unauthorized* electronic fund transfers," defined as EFTs "from a consumer's account initiated by a person other than the consumer without actual authority to initiate such transfer and from which the consumer receives no benefit, ...." 15 U.S.C. § 1693a(12). Plaintiffs' claims involve <u>unauthorized</u> transfers that extended through May 2023, each of which reset the one-year statute of limitations. *See generally*, 4SAC ¶¶ 19-59. Accordingly, these claims are not time-barred.

### 2.    Plaintiffs' Disputed Transactions Are Not Excluded Under Regulation E

The EFTA and its implementing Regulation E cover a broad range of EFTs, which include any "transfer from the consumer's account resulting from a debit-card transaction at a merchant location, even if no electronic terminal is involved at the time of the transaction, if the consumer's asset account is subsequently debited for the amount of the transfer." 12 C.F.R. pt. 1005, Supp. I, cmt. 3(b)(1)(iv).

Chase falsely and baselessly claims that "[t]he fifteen Chase transactions identified by Shangjin consist of in-person branch withdrawals and a domestic wire transfer." Opp. at 16:4-5. Yet, none of the cited paragraphs or exhibits to the TAC allege or show that any of the disputed withdrawal transactions were made *in-person* at a Chase local branch location as opposed to an ATM or any other method. *See* ECF No. 83 ¶¶ 48-50; ECF Nos. 83-12 & 83-13.

---

[6] Other courts including in the Ninth Circuit have also rejected *Wike*'s approach to the one-year statute of limitations for recurring transfers. *See e.g.*, *Gunter v. United Fed. Credit Union*, No. 3:15-cv-00483-MMD-WGC, 2018 WL 4286181, at *4 (D. Nev. 2018); *Diviacchi*, 2015 WL 3631605, at *5.

61749.1

PLAINTIFFS' REPLY TO DEFENDANT JPMORGAN CHASE BANK, N.A.'S OPPOSITION TO MOTION FOR
LEAVE TO FILE FOURTH AMENDED SUPPLEMENTAL COMPLAINT

Chase also grossly mischaracterize and misinterpret the exclusions under the EFTA. For example, 12 C.F.R. § 1005.3(c)(1) does not provide that *all* in-person teller transactions are excluded from the EFTA, but rather specifically excludes "Any transfer of funds originated by check, draft, or similar paper instrument; or any payment made by check, draft, or similar paper instrument at an electronic terminal." *See* Opp. at 11:16-26. The CFPB's Comment also provides: "A terminal or other computer equipment operated by an employee of a financial institution is not an electronic terminal for purposes of the regulation. However, transfers initiated at such terminals by means of a consumer's access device (using the consumer's PIN, for example) are EFTs and are subject to other requirements of the regulation." " 12 C.F.R. pt. 1005, Supp. I, cmt. 2(h)(3). Chase does not claim nor provide any evidence that any of the disputed withdrawals, even if made in-person, were not initiated by Plaintiff's access device. And in any event, "[a] consumer has no liability for erroneous or fraudulent transfers initiated by an employee of a financial institution." 12 C.F.R. pt. 1005, Supp. I, cmt. 2(m)-1.

Moreover, 12 C.F.R. § 1005.3(c)(3) does not "exclud[e] wire or similar transfers from the EFTA" as Defendants claim. *See* Opp. at 11:22-23. Rather, it excludes "[a]ny transfer of funds through Fedwire or through a similar wire transfer system that is used primarily for transfers between financial institutions or between businesses." 12 C.F.R. § 1005.3(c)(3) (emphasis added). Chase's quoted language from *Kanji v. Bank of Am., N.A.*, No. CV 20-3820-RSWL-SK, 2020 WL 8175548, at *3 (C.D. Cal. 2020) is grossly mischaracterized and taken out of context. In *Kanji*, the plaintiff alleged claims under Division 11 (Cal. Com. Code §§ 11201) but not under the EFTA. The Court explicitly acknowledged that the EFTA wire transfer exclusion applies specifically to "[a]ny transfer of funds through Fedwire or through a similar wire transfer system[.]" *Id.* at *3. Plaintiffs have plausibly alleged that all of the fraudulent transactions alleged against Chase fall of which are squarely within the EFTA's broad coverage. *See* 12 C.F.R. § 1005.3(b)(1)(ii) [ATM transfers]; (iii) [direct withdrawals]; and (v) [debit card

1  transactions]. Accordingly, Plaintiffs' disputed transactions are neither statutorily

2  excluded nor futile on such basis.

3  **III.    <u>CONCLUSION</u>**

4      For the foregoing reasons, Plaintiffs' Motion for Leave should be granted.

5  DATED:  August 13, 2025              FROST LLP

6

7

8                                By:      */s/ Lawrence J.H. Liu*
                                        CHRISTOPHER FROST
9                                        LAWRENCE J.H. LIU
                                        BENJAMIN GRUSH
10                                       KEVIN SALMASSY
                                        Attorneys for Plaintiffs SHANGJIN CHEN
11                                       and DANHONG CHEN

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFFS' REPLY TO DEFENDANT JPMORGAN CHASE BANK, N.A.'S OPPOSITION TO MOTION FOR
LEAVE TO FILE FOURTH AMENDED SUPPLEMENTAL COMPLAINT

# CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Plaintiffs Shangjin Chen and Danhong Chen, certifies that this brief contains 4,722 words, which complies with the word limit of L.R. 11-6.1.


DATE: August 13, 2025                         _/s/ Lawrence J.H. Liu_____
                                              Lawrence J.H. Liu

61749.1

16

PLAINTIFFS' REPLY TO DEFENDANT JPMORGAN CHASE BANK, N.A.'S OPPOSITION TO MOTION FOR LEAVE TO FILE FOURTH AMENDED SUPPLEMENTAL COMPLAINT