UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHANGJIN CHEN; and DANHONG CHEN,<br><br>　　　　　　Plaintiffs,<br><br>　　v.<br><br>JPMORGAN CHASE BANK, N.A.; BANK OF AMERICA, N.A.; MERRILL LYNCH, PIERCE, FENNER & SMITH INC.; and DOES 1 THROUGH 10,<br><br>　　　　　　Defendants. | Case No. 2:23-cv-10874-SPG-AS<br><br>**ORDER DENYING DEFENDANT BANK OF AMERICA, N.A.'S MOTION TO DISMISS THIRD AMENDED COMPLAINT**<br>**[ECF NO. 85]** |

Before the Court is the Motion to Dismiss the Third Amended Complaint (ECF No. 85 ("Motion")) filed by Defendant Bank of America, N.A. ("BANA"). The Court has read and considered the matters raised with respect to the Motion and concluded that this matter is suitable for decision without oral argument. *See* Fed. R. Civ. P. 78(b); C.D. Cal. L.R. 7-15. Having considered BANA's submission, the relevant law, and the record in this case, the Court DENIES BANA's Motion.

## I. BACKGROUND

### A. Factual Background

The following facts are taken from Plaintiffs' Third Amended Complaint (ECF No. 83 ("TAC")). This is an action by two siblings, Plaintiff Shangjin Chen and Plaintiff Danhong Chen, who seek to hold BANA and Defendant JPMorgan Chase Bank, N.A. ("Chase," together with BANA, "Defendants") liable for fraudulent activity on certain BANA accounts belonging to Plaintiffs and certain Chase accounts belonging to Plaintiff Shangjin Chen. (*Id.* ¶¶ 2–4). Although the TAC does not assert claims against them, Plaintiffs also allege that fraudulent activity occurred related to certain Merrill Lynch, Pierce, Fenner & Smith Inc. ("Merrill") cash management accounts associated with Plaintiffs. (*Id.* ¶¶ 2, 5). Plaintiffs allege an unidentified third-party accessed Plaintiffs' BANA, Chase, and Merrill accounts without authorization and impersonated Plaintiff Danhong Chen to fraudulently transfer out approximately and collectively $1.7 million from Plaintiffs' accounts. (*Id.* ¶ 10). Plaintiffs allege that Defendants failed to detect the fraudulent activity and failed to institute commercially reasonable security procedures, allowing the fraudulent activity to proliferate for a number of months before Plaintiffs detected the fraudulent transfers and notified the Defendants. (*Id.*).

As relevant to this Motion, Plaintiffs each separately maintained a checking account and a savings account with BANA, and Plaintiff Shangjin Chen maintained a cash management account with Merrill. (*Id.* ¶¶ 20–22). On May 5, 2023, while abroad, Plaintiff Danhong Chen learned that her BANA accounts had been compromised after she attempted to use funds in a BANA account to pay a bill but received an insufficient funds alert. (*Id.* ¶ 23). Upon reviewing her account statements, Plaintiff Danhong Chen identified two "unauthorized 'agent assisted transfers'" on April 3 and 18, 2023, moving money out of the account and totaling $438,883.96. (*Id.* ¶ 24). On May 8, 2023, Plaintiff Danhong Chen returned to the United States and reported the fraudulent transactions to BANA representative Marshall Yuan at her local BANA bank branch. (*Id.* ¶ 25). Yuan informed Plaintiff Danhong Chen that an imposter had used her name to open a new joint Merrill

cash management account in her name and that of her brother, Plaintiff Shangjin Chen, and transferred "all of [Plaintiff Danhong Chen's] funds from her BANA accounts to the fraudulent Merrill [account]." (*Id.* ¶ 26).

Plaintiff Danhong Chen informed Plaintiff Shangjin Chen, of the fraudulently-opened joint Merrill account. (*Id.* ¶ 28). Upon speaking with his sister, Plaintiff Shangjin Chen attempted to access his BANA accounts, but learned that his passwords and credentials had been changed, and he could no longer access his accounts. (*Id.*). Plaintiff Shangjin Chen, who was also abroad at the time he discovered the fraudulent activity, returned to the United States on or around May 24, 2023, and went to his local BANA branch to inquire about recent activity on his BANA account, as well as his validly-opened Merrill account. (*Id.* ¶ 29). Upon reviewing account statements, Plaintiff Shangjin Chen identified a number of fraudulent transactions occurring between October 2022 and April 2023 involving his BANA and validly-opened Merrill accounts. (*Id.* ¶¶ 29–40). These transactions included: (1) selling three certificates of deposit from Plaintiff Shangjin Chen's validly-opened Merrill account (*id.* ¶¶ 30–31); (2) teller and ATM cash withdrawals from Plaintiff Shangjin Chen's BANA savings and checking accounts (*id.* ¶¶ 32, 35); (3) purchases and electronic payment transfers from Plaintiff Shangjin Chen's BANA checking account (*id.* ¶¶ 34, 38–40); and (4) numerous transfers between Plaintiff Shangjin Chen's checking, savings and cash management accounts, allegedly made to "avoid suspicion" of the fraudulent activity (*id.* ¶¶ 31, 33, 35).

On May 25, 2023, Plaintiff Shangjin Chen filed a police report with the Arcadia Police Department regarding the fraudulent activity. (*Id.* ¶ 42). He also returned to a BANA branch to report the fraudulent activity to his BANA account manager, Jimmy Zhou. (*Id.* ¶ 43). Zhou informed Plaintiff Shangjin Chen that a review of camera footage from the BANA centers where the joint Merrill account was fraudulently opened showed that a male individual used a fake ID bearing Plaintiff Danhong Chen's name to open the new joint fraudulent Merrill account in Plaintiffs' names. (*Id.*).

On May 15 and August 15, 2023, BANA informed Plaintiffs that the investigation of the alleged fraud was complete and that, as for Plaintiff Danhong Chen, the "transfer(s) in question [were] made to an account that provided a benefit to a valid signer on the account." (*Id.* ¶ 44). As for Plaintiff Shangjin Chen, the investigation determined that he had "authorized the transaction." (*Id.* ¶ 45). Later, after receiving a letter from Plaintiffs' attorneys, BANA stated it was still investigating Plaintiffs' claims. (*Id.* ¶ 46). Plaintiffs allege that BANA and Merrill have "refused to fully reimburse Plaintiffs' stolen funds that were [the] subject [of] the fraudulent transactions," and have "refused Plaintiffs' requests for information and documents pertaining to their investigation." (*Id.* ¶ 47).

### B. Procedural History

On November 22, 2023, Plaintiffs filed a complaint in the Superior Court of California, County of Los Angeles. (ECF No. 1-1). On December 29, 2023, Defendants removed the action to this Court. (ECF No. 1). Plaintiffs then filed a First Amended Complaint on February 15, 2024 (ECF No. 18 ("FAC")), pursuant to this Court's Order Granting Stipulation for Leave to Amend Complaint (ECF No. 14). The FAC brought ten causes of action against BANA, Merrill, and Chase: (1) Violation of California's Commercial Code § 11101, *et seq.* ("Division 11"); (2) Violation of California Consumer Privacy Act ("CCPA"), California Civil Code § 1798.100 *et seq.*; (3) Violation of California's Customer Records Act ("CCRA"), California Civil Code § 1798.80, *et seq.*, including under §§ 1798.81.5(b) and 1798.82(a); (4) Violation of California's Unfair Competition Law ("UCL"), Business and Professions Code § 17200, *et seq.*; (5) Breach of Fiduciary Duty; (6) Conversion; (7) Breach of Contract; (8) Breach of Implied Covenant of Good Faith and Fair Dealing; (9) Negligence; and (10) Declaratory Relief. *See* (FAC). Defendants moved to dismiss all causes of action in the FAC under Federal Rule of Civil Procedure 12(b)(6). (ECF Nos. 23, 24). On August 20, 2024, the Court granted Defendants' motions to dismiss, dismissing all ten of Plaintiffs' claims, granting leave to amend on some claims and denying leave to amend on others. (ECF No. 36).

On September 3, 2024, Plaintiffs filed a Second Amended Complaint, which trimmed down Plaintiffs' causes of action to five: (1) Violation of Division 11; (2) Violation of the CCPA; (3) Violation of the CCRA; (4) Violation of the UCL; and (5) Declaratory Relief. *See* (ECF No. 39 ("SAC")). After BANA and Merrill filed a motion to dismiss the SAC, the Court granted the motion, dismissing all claims in the SAC against BANA and Merrill and granting leave to amend only as to Plaintiffs' Division 11 claim against BANA and CCPA claim against BANA and Merrill. (ECF No. 76 ("Order")).

On June 2, 2025, Plaintiffs filed the operative TAC, further trimming down Plaintiffs' causes of action to only two: (1) Violation of Division 11 against BANA by both Plaintiffs (TAC ¶¶ 59–98); and (2) Violation of Division 11 against Chase by Plaintiff Shangjin Chen only (*id.* ¶¶ 99–113). On June 12, 2025, Chase answered the TAC. (ECF No. 84). On June 13, 2025, BANA filed the instant Motion to Dismiss the TAC. (Mot.). Plaintiffs oppose the Motion. (ECF No. 86 ("Opp.")). Defendants have filed their reply. (ECF No. 88 ("Reply")).

## II.   LEGAL STANDARD

Rule 8(a)(2) of the Federal Rules of Civil Procedure requires a complaint to include "a short and plain statement of the claim showing that the pleader is entitled to relief." A short and plaint statement "give[s] the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (cleaned up). A complaint that fails to meet this standard may be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6). When resolving a motion to dismiss for failure to state a claim under Rule 12(b)(6), courts "must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007). "Dismissal under Rule 12(b)(6) is proper when the complaint either (1) lacks a cognizable legal theory or (2) fails to allege sufficient facts to support a

cognizable legal theory." *Somers v. Apple, Inc.*, 729 F.3d 953, 959 (9th Cir. 2013). To survive a Rule 12(b)(6) motion, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 547. "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (internal quotation marks and citation omitted).

When ruling on a Rule 12(b)(6) motion, the Court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). However, the Court is "not required to accept as true allegations that contradict exhibits attached to the complaint or matters properly subject to judicial notice, or allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Seven Arts Filmed Ent., Ltd. v. Content Media Corp. PLC*, 733 F.3d 1251, 1254 (9th Cir. 2013) (citing *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010) (internal quotation marks omitted)). The Court also is not required to accept as true "[t]hreadbare recitals of the elements of a cause of action." *Iqbal*, 556 U.S. at 678.

III. **DISCUSSION**

    A.    **Central District of California Local Rule 7-3**

As an initial matter, Plaintiffs argue the Court should deny the Motion and impose monetary sanctions on BANA's counsel based on BANA's alleged lack of compliance with Local Rule 7-3. (Opp. at 6, 11).[1] The Court declines to do either.

Local Rule 7-3 requires that, before filing any motion, the moving party must meet-and-confer at least seven calendar days before filing the motion to "discuss thoroughly"

---

[1] The page numbers cited herein refer to the ECF page number, and do not necessarily correspond with the page number indicated on the filed paper.

the "substance of the contemplated motion and any potential resolution." C.D. Cal. L.R. 7-3. Local Rule 7-3 also provides that "counsel for the moving party must include a declaration, under penalty of perjury, that sets forth at a minimum the date(s) the conference took place and the position of each party with respect to each disputed issue that will be the subject of the motion." The Court's Standing Order for Civil Cases requires that the parties must meet and confer in person or through videoconference. (ECF No. 9 ("Standing Order") at 10).

Plaintiffs argue that BANA did not comply with Rule 7-3 in two ways. First, Plaintiffs argue that BANA did not meet-and-confer on the Motion at least seven days before it filed the Motion and "rush[ed] to file" the Motion before Plaintiffs could file a stipulation or motion for leave to amend the operative pleading. (Opp. at 9–11). BANA responds that it did file its Motion only four days after the parties' met-and-conferred, and "[a]dmittedly it was an oversight on BANA's part." (Reply at 11). However, the parties discussed the substance of the Motion during their meet-and-confer and before filing the Motion. (*Id.* at 11–12). The Court does not condone filing a motion fewer than seven days after a meet-and-confer. However, Plaintiffs have not identified how BANA's decision to file the Motion four days, instead of seven days, after the parties met-and-conferred caused prejudice to Plaintiffs. Here, BANA declined to stipulate to Plaintiffs' request for leave to file a new pleading before BANA filed its Motion, and BANA offered times to meet-and-confer on Plaintiffs' contemplated motion for leave to amend. *See* (ECF No. 86-1 ("Liu Decl.") ¶ 17; ECF No. 86-4, Ex. C at 3–6). Accordingly, while it appears that BANA did file their Motion early, Plaintiffs have not shown that BANA doing so impaired Plaintiffs ability to seek leave to amend within the seven-day time period.

Second, Plaintiffs argue that the Motion does not include an attorney declaration signed under penalty of perjury that BANA complied with the meet and confer requirements. (Opp. at 11–12). BANA admits that it did not include such a declaration in support of its Motion, but responds that it instead included a statement of conferral in the notice of the Motion. (Reply at 12–13). Further, BANA argues there are "two operative

version[s] of Local Rule 7-3"—one that requires only that the moving party "include in the notice of motion a statement" of conferral and another that requires such a statement be included in an attorney "declaration, under penalty of perjury." (*Id.* at 8–9). BANA is incorrect that there are "two operative version[s]" of Rule 7-3. (*Id.* at 8). There is only one Local Rule 7-3, which was updated on June 1, 2025, in favor of requiring a declaration made under penalty of perjury, stating that the parties met-and-conferred in compliance with Local Rule 7-3, over simply providing a statement of conferral in the notice of the Motion. However, given the recent change in the rule, BANA's compliance with the previous version of the rule by including a statement of conferral in their notice of the motion, and the fact that the parties did meet-and-confer, the Court declines to impose sanctions. Instead, it will consider the substance of the Motion. All parties are cautioned that failure to comply with the Local Rules and the Court's Standing Orders in the future may result in the imposition of sanctions.

    **B.**    **Division 11 Claim**

Article 4A of the Uniform Commercial Code ("UCC") governs "a bank's duties regarding the authorization and verification of payment orders." *800 Columbia Project Co., LLC v. CMB Wing Lung Bank, Ltd.*, No. 8:21-cv-00278-JLS-ADS, 2022 WL 17884221, at *6 (C.D. Cal. Sept. 19, 2022). Adopted in California as Division 11 of the California Uniform Commercial Code, § 11201 *et seq.*, this statute applies to "funds transfers" and "provide[s] a detailed scheme for analyzing the rights, duties and liabilities of banks and their customers in connection with the authorization and verification of payment orders." *Zengen, Inc. v. Comerica Bank*, 41 Cal. 4th 239, 251–52 (2007); *see* Cal. Com. Code § 11201 *et seq.*

Sections 11202, 11203, and 11204 determine whether a bank or a customer bears the "risk of loss" in a fraudulent wire transfer. *See* UCC § 4A-203 cmt. 5, 6.[2] California

---

[2] The comments to Article 4A are "persuasive in interpreting the statute," as "the Legislature adopted article 4A of the Uniform Commercial Code exactly as written." *Zengen*, 41 Cal. 4th at 252; *see also Grand Bayman Belize, Ltd. v. Wells Fargo & Co.*, 514

Commercial Code § 11204(a) states, in relevant part, that, "[i]f a receiving bank accepts a payment order issued in the name of its customer as sender which is (i) not authorized and not effective as the order of the customer under Section 11202, or (ii) not enforceable, in whole or in part, against the customer under Section 11203, the bank shall refund any payment of the payment order received from the customer to the extent the bank is not entitled to enforce payment and shall pay interest on the refundable amount calculated from the date the bank received payment to the date of the refund."  Under § 11202(a), the customer is responsible for payment order transfers that they, as a sender, actually authorize.  However, a payment order is "effective as an order of the customer, whether or not authorized" where: (1) the bank and customer have agreed that the authenticity of the payment order will be verified by a security procedure; and (2) that security procedure is "a commercially reasonable method of providing security against unauthorized payment orders"; and (3) "the bank proves that it accepted the payment order in good faith and in compliance with the bank's obligations under the security procedure."  Cal. Com. Code § 11202(b).  Good faith is defined as "honesty in fact and the observance of reasonable commercial standards in fair dealing." *Id.* § 1201(b)(20).  "This two-pronged definition has both a subjective component—honesty in fact—and an objective component—the observance of reasonable commercial standards of fair dealing." *Choice Escrow & Land Title, LLC v. BancorpSouth Bank*, 754 F.3d 611, 622 (8th Cir. 2014) (referencing Miss. Code Ann. § 75-4A-101 *et seq.*, in which Mississippi, like California, enacted Article 4A of the UCC in its entirety).

Therefore to state a claim under California Commercial Code § 11202(b), a plaintiffs must allege (1) the existence of agreed-upon security procedures with the bank defendant; (2) the security procedures are not a "commercially reasonable method of providing

---

F. Supp. 3d 1188, 1192, 1193 n.5 (C.D. Cal. 2021), *judgment entered*, No. 19-cv-07698-ODW-RAO, 2021 WL 243319 (C.D. Cal. Jan. 25, 2021), and *aff'd sub nom. Grand Bayman Belize, Ltd. v. Wells Fargo Bank, N.A.*, No. 21-55146, 2022 WL 171937 (9th Cir. Jan. 19, 2022) ("The Official Code Comments to Division 11 are persuasive in interpreting [Division 11 of the California Uniform Commercial Code].").

security against unauthorized payment orders"; or (3) the bank defendant acted in bad faith (*i.e.*, the bank defendant did not comply with the agreed-upon security procedures or failed to comply with reasonable commercial standards of fair dealing). *See Essgeekay Corp. v. TD Bank, N.A.*, No. 18-cv-183663-ESC-LW, 2018 WL 6716830, *3–*4 (D.N.J. Dec. 19, 2018) (denying a motion to dismiss because plaintiffs alleged a bank defendant did not comply with agreed-upon security procedures); *Banco del Austro, S.A. v. Wells Fargo Bank, N.A.*, 215 F. Supp. 3d 302, 305–06 (S.D.N.Y. 2016) (finding that a plaintiff properly alleged a claim under Section 4-A-202 of the UCC without "any claim of subjective bad faith"); *c.f. Hunter v. Citibank, N.A.*, No. C09-02079 JW, 2010 WL 2509933, *7 (N.D. Cal. Feb. 3, 2010) (granting a motion to dismiss because plaintiffs did "not allege any facts that would establish liability under Article 4A, such as an unauthorized wire transfer or lack of commercially reasonable security measures").

Plaintiffs premise their Division 11 claim against BANA on two agreements that Plaintiffs allege were entered into between Plaintiffs and BANA and contain agreed-upon security procedures: (1) BANA's Online Banking Service Agreement ("Online Agreement"), that Plaintiffs allege relates to fraudulent transfers, unauthorized electronic payments, and purchases (TAC ¶¶ 73, 74); and (2) BANA's Deposit Agreement and Disclosures ("Deposit Agreement"), that Plaintiffs allege relates to in-person teller and ATM transactions (*id.* ¶ 68). Plaintiffs allege that the agreed-upon security procedures contained within these two documents were commercially unreasonable and, thus, under Division 11, any payment orders enforced by BANA under them are not effective and should have been refunded. *See* (*id.* ¶¶ 70, 75). Plaintiffs also allege that BANA "failed to prove that it performed security and identification methods" in the Online Agreement and "did not verify or correct the fraudulent payment orders as provided in the Online [] Agreement and Deposit Agreement." (*Id.* ¶¶ 88–89). BANA argues that neither the Online Agreement nor the Deposit Agreement can form the basis for Plaintiffs' Division 11 claim. (Mot. at 14). The Court addresses the arguments under each Agreement in turn.

1. The Deposit Agreement

BANA first argues that "Plaintiffs do not adequately allege the existence of agreed upon security procedures" premised on the Deposit Agreement. (*Id.* at 14). However, the TAC alleges, among other facts, that the Deposit Agreement "govern[ed] Plaintiffs' deposit accounts with BANA" and contained "BANA's security procedures for in-person teller and ATM transactions." *See* (TAC ¶ 68). The TAC then quotes the following language Plaintiff asserts is taken from a Deposit Agreement:

> Transactions, including those for which we provide a receipt, may be subject to subsequent verification and correction, though we reserve the right not to do so in every case. We do not verify a deposit at the teller window so the receipt you receive at the time of your deposit is not evidence that your deposit has been verified. We may reverse or otherwise adjust any transaction (both credit and debit) that we believe we erroneously made to your account at any time without prior notice to you, if we opt to do so.

*See* (*id.*). The TAC goes on to allege that BANA's security procedures for in-person and ATM transactions were presented to Plaintiffs in a prolix form as part of BANA's standard adhesion agreements with its customers with respect to in-person teller and ATM "payment orders." *See, e.g.*, (*id.* ¶¶ 68 (alleging to which transactions the Deposit Agreement applies), 81 (stating "Plaintiffs were neither informed of nor offered any choice for alternative security procedures")). Plaintiffs have included a short and plain statement that the security procedures contained in BANA's Deposit Agreement were not commercially reasonable because the Deposit Agreement "does not specify any required verification or correction procedures" and grants BANA "discretion to decide when to verify a transaction, and to reverse or adjust any transaction BANA (in its sole discretion) decides was erroneously made." (*Id.* ¶ 70); *see also* (*id.* ¶ 86 ("BANA's agreed-upon security procedures as provided in the Deposit Agreement and Online Banking Agreement were not commercially reasonable . . . .")). Plaintiffs also allege that "BANA relied solely on the presentation of a physical ID without incorporating additional verification steps,

making it easy for the imposter to use counterfeit identification to access and manipulate Plaintiffs' accounts." (*Id.* ¶ 84). The Court finds for purposes of the Motion that such allegations, when taken as true, state sufficient facts to demonstrate based on the Deposit Agreement the existence of "agreed-upon procedures" that were not commercially reasonable under § 11202(b)(i). (*Id.* ¶¶ 69–70, 81); *see Essgeekay Corp.*, 2018 WL 6716830, at *3–*4 (determining that the defendant bank's two-factor authentication security procedure was commercially reasonable for the purposes of the motion to dismiss under Section 4A-203); *cf. Banco del Austro, S.A.*, 215 F. Supp. 3d at 305–06 (declining to rule at the pleading stage whether a security procedure was "commercially reasonable" as matter of law because the "commercial reasonableness inquiry" as provided by UCC Article 4A is "fact-intensive" and "one that courts typically address at summary judgment").

BANA also argues that the TAC does not allege sufficient facts to establish the nature of the "conduct that BANA [purportedly] engaged in that constituted a breach of any agreed-upon procedures, or that it acted in bad faith," and argues that the TAC is "devoid of any factual allegation establishing why [certain] transactions should have been flagged [as suspicious] or how BANA acted unreasonably or in bad faith in allowing the transactions." (Mot. at 16). Similarly, BANA argues that the TAC fails to offer facts "showing how the fraudster obtained [Plaintiffs'] personal information in the first instance, nor do Plaintiffs allege they 'proved' that the alleged imposters gained access to Plaintiffs' personal information from a source other than from Plaintiffs themselves." (*Id.* at 16–17). BANA's arguments, however, fail for two reasons.

First, Plaintiffs may articulate a Division 11 claim premised on allegations that the agreed-upon security procedures between BANA and Plaintiffs were commercially unreasonable without needing to additionally allege that BANA accepted the payment order not in "good faith" or "compliance with the bank's obligations under the security procedure and any agreement or instruction of the customer." Cal. Com. Code § 11202(b). The crux of Plaintiffs' argument is that BANA's security procedures, compared to those

articulated under Cal. Com. Code § 11202(b), "were not commercially reasonable as they did not require BANA to notify Plaintiffs that highly unusual activity was occurring on their accounts and to positively confirm whether such activity was authorized before accepting such requested changes or orders." (TAC ¶¶ 92, 93). This alleged failure to comply with commercially reasonable security measures alone may constitute bad faith. *See, e.g.*, *Banco del Austro, S.A.*, 215 F. Supp. 3d at 305–06 (finding that a plaintiff properly alleged a claim under Section 4-A-202 of the UCC without "any claim of subjective bad faith").

Under California Commercial Code § 11202(b), "banks must bear the loss for unauthorized orders unless those orders are verified in good faith pursuant to a commercially reasonable security procedure to which the bank and its customer agreed." *800 Columbia Project Co., LLC*, 2022 WL 17884221, at *7. Thus, a loss resulting from an unauthorized order is transferred from the bank to the customer only if: (1) the bank and the customer have agreed to security procedures for particular payment orders; (2) that are deemed commercially reasonable as a matter of law; and (3) the bank followed those security procedures in good faith. *See* Cal. Comm. Code § 11202(b); *800 Columbia Project Co., LLC*, 2022 WL 17884221, at *6 ("If a payment order was neither authorized nor verified pursuant to a commercially reasonable security procedure that the bank followed in good faith, the bank must bear the loss."); *Regatos v. N. Fork Bank*, 257 F. Supp. 2d 632, 640 (S.D.N.Y. 2003) ("The default rule of the UCC is that the bank will bear the loss of any unauthorized funds transfer[,] . . . subject to a broad exception when the bank and its customer agree on a 'security procedure' to ensure that payment orders received by the bank are authorized and error-free.").

As described above, the TAC has sufficiently alleged that: (1) BANA and Plaintiffs agreed to security procedures in the Deposit Agreement that relate to in-person or ATM transactions; and (2) those security procedures were not commercially reasonable. Thus, under this "specific scheme for allocation of loss," Plaintiffs have sufficiently alleged that

1  the bank should bear the alleged loss associated with any unauthorized in-person or ATM
2  transactions. *See Zengen, Inc.*, 41 Cal. 4th at 251–52.

3  But even if, as BANA argues, pleading bad faith under the circumstances is also required, the TAC also contains a short and plain statement that "BANA acted unreasonably or in bad faith" by allowing the allegedly fraudulent transactions. *See* (TAC ¶¶ 57, 88–90, 97). For example, the TAC states that BANA "failed to perform any due diligence to verify or stop" the alleged fraudster from making changes to Plaintiffs' accounts, and "despite repeated requests" for information regarding the stolen funds, BANA has "refused to accept any responsibility for fully reimbursing" Plaintiffs. (*Id.* ¶¶ 56–57). Additionally, the TAC alleges that BANA did not "verify or correct the fraudulent payment orders as provided in the Online [] Agreement and Deposit Agreement after receiving notice by Plaintiffs that such transactions were not authorized." (*Id.* ¶ 88); *see also* (*id.* ¶ 97 ("By . . . accepting the unauthorized payment orders without good faith . . . BANA violated its obligations under Division 11.")). Such statements are sufficient on a motion to dismiss to allege that BANA acted in "bad faith" when accepting the allegedly unauthorized payment orders under Division 11.

BANA asserts that the Deposit Agreement quoted in the TAC was not in effect from October 2022 to April 2023, at the time the alleged fraud took place. (Mot. at 15); *see also* (Reply at 17). However, BANA's argument raises a factual dispute that is inappropriate for resolution on a motion to dismiss, where the Court must take all properly pleaded factual allegations as true.[3] *Manzarek*, 519 F.3d at 1031. As stated previously, Plaintiffs

---

[3] In support of its Reply, BANA attaches a copy of the 2025 Deposit Agreement, which it argues is "incorporated by reference into the TAC" and thus must be considered by the Court in its entirety in conjunction with Plaintiffs' allegations in the TAC. *See* (Reply at 17 (citing *Khoja v. Orexigen Therapuetics, Inc.*, 899 F.3d 988, 1002 (9th Cir. 2018)); (ECF No. 88-1 ("White Decl.") ¶ 11, Ex. 1 ("2025 Deposit Agreement")). However, the TAC does not appear to incorporate by reference the Deposit Agreement from 2025 specifically. Further, BANA's incorporation-by-reference argument raised in its Reply contradicts its argument in its Motion (and renewed in the Reply) that agreed upon security measures in the Deposit Agreement were not properly pleaded because the Deposit Agreement was not

allege that the Deposit Agreement quoted in the TAC applies to the "numerous teller cash withdrawals [] and ATM withdrawals" that are alleged to be fraudulent in the TAC. *See* (TAC ¶ 69). The TAC and its exhibits do not raise facts contradicting the allegations that the Deposit Agreement applies to these allegedly fraudulent transactions. Thus, BANA's argument regarding the effective date of the Deposit Agreement is unavailing.

Citing to various federal and California cases discussing claims for breach of a written contract generally, BANA also argues that the Deposit Agreement should have been pleaded verbatim in the body of the TAC, attached to the TAC and incorporated by reference, or "pleaded according to its legal effect." *See* (Motion at 15 (citing *Quesada v. Marten Transport, Ltd.*, No. 2:23-cv-311, 2023 WL 8806603, at *11 (E.D. Cal. Dec. 20, 2023))); *see also* (Reply at 16). However, under Rule 8 of the Federal Rules of Civil Procedure, Plaintiffs need only plead a short and plain statement of their claim demonstrating they are entitled to relief. *See* Fed. R. Civ. P. 8(a); *Martin v. Pierce Cnty.*, 34 F.4th 1125, 1130 (9th Cir. 2022) (commenting that "Rule 8 does not require attachments"); *Megawatt Grp., LLC v. Patterson Companies, Inc.*, No. 2:24-cv-00871-MAA, 2024 WL 5372407, at *3 (C.D. Cal. June 14, 2024) ("Although the FAC did not attach the relevant portions of the agreement stating th[e] obligation . . . such level of detail is not required by Rule 8.").

For the foregoing reasons, the Court finds the TAC has sufficiently pleaded a short and plain statement of entitlement to relief under Division 11 for allegedly unauthorized in-person teller and ATM transactions premised on allegedly commercially unreasonable security procedures agreed to by BANA and the Plaintiffs in the Deposit Agreement.

### 2. Online Agreement

BANA argues that Plaintiffs have failed to allege that BANA "did not follow th[e] agreed-upon security measures" in the Online Agreement. (Mot. at 17). However, as

---

attached, pleaded verbatim, or incorporated by reference. *See* (Mot. at 15; Reply at 16). Accordingly, the Court declines to consider the 2025 Deposit Agreement BANA provides in support of its Reply.

discussed above, Plaintiffs may sufficiently plead a Division 11 claim by: (1) identifying agreed-upon security procedures that applied to payment orders; and *either* (a) alleging those agreed-upon security procedures were not commercially reasonable; *or* (b) those security procedures were not followed in good faith by the bank. *See* Cal. Comm. Code § 11202(b); *800 Columbia Project Co.*, 2022 WL 17884221, at *6. The TAC, however, pleads both that BANA did not employ commercially reasonable security measures, and those procedures were not followed in good faith by BANA.

First, the TAC alleges that BANA and Plaintiffs agreed to security procedures in the Online Agreement that relate to fraudulent transfers between Plaintiff Danhong Chen's accounts, and unauthorized electronic payments and purchases made from Plaintiff Shangjin Chen's accounts.[4] *See* (TAC ¶ 74). The TAC further alleges that BANA and Plaintiffs agreed to "implement security procedures that included, at a minimum, security questions and one-time passcodes." (*Id.* ¶ 73); *see also* (*id.* ¶ 73, Ex. 15 ("Online Agreement") § 6A ("By enrolling in this Service and accessing it using your User ID and password, and such other security and identification methods as we may require from time to time, such as security questions or one-time passcodes, you acknowledge and agree that this system includes security procedures for transfers initiated through this Service that are commercially reasonable.")). Like the Deposit Agreement, Plaintiffs allege that the Online Agreement was "presented to Plaintiffs in prolix form as part of BANA's standard adhesion agreements with its customers," and "Plaintiffs were neither informed of nor offered any choice for alternative security procedures." (*Id.* ¶ 81). The TAC alleges that these security procedures are not commercially reasonable because the agreed-upon procedures are

---

[4] BANA raises that the Online Agreement has an effective date of February 27, 2023, and thus cannot apply to "any allegedly fraudulent banking transactions that predate February 27, 2023." (Reply at 19); *see* (Mot. at 17 n.8). Although the Online Agreement does have an effective date of February 27, 2023, BANA points to no language in the Online Agreement that would support BANA's conclusion that all transactions before that date are not covered by the Online Agreement. Given the allegations presented in the TAC and the factual nature of BANA's dispute, this argument is more appropriate on a motion for summary judgment.

"strictly permissive and do[] not actually require BANA to implement such methods or even specify when BANA will implement them. *See* (*id.* ¶ 75). Additionally, the TAC alleges that BANA's "permissive" procedures are unreasonable because they did "not require sufficient multi-factor authentication" and, under guidance from the Federal Financial Institutions Examination Council ("FFIEC"), BANA should have used other "layered security" measures such as "user time-out, system hardening, network segmentation, monitoring processes, and transaction amount limits" for online transactions. (*Id.* ¶¶ 76, 82). Second, Plaintiffs also pleaded that BANA accepted the allegedly fraudulent transfers in bad faith. *See* (*id.* ¶ 89 ("BANA failed to prove that it performed its security and identification methods under its Online Banking Agreement, such as requiring the fraudster to answer security questions or verifying one-time passcodes.")).

BANA also argues that Plaintiffs already agreed in the Online Agreement that the security measures employed by BANA are "commercially reasonable," and thus Plaintiffs cannot now allege such measures were not commercially reasonable. (Mot. at 18). The TAC's quoted language from the Online Agreement does state that the agreeing party "acknowledge and agree that this system includes security procedures for transfers initiated through these service that are commercially reasonable." *See* (Online Agreement § 6A). However, BANA's Motion cites to no authority supporting that a Division 11 claim is barred if Plaintiffs have previously agreed that BANA will use "commercially reasonable" security procedures.[5] Moreover, "the obligation of a receiving bank to refund payment"

---

[5] In its Reply, BANA cites to a portion of California Commercial Code § 11202(c) to argue that, by agreeing to the Online Agreement, Plaintiffs have "chosen" a "security procedure" that BANA followed when it accepted the allegedly fraudulent payment orders, and thus those security procedures must be deemed commercially reasonable. *See* (Reply at 22). BANA, however, only selectively quotes that portion of California Commercial Code § 11202(c), which explicitly states it applies to security procedures that were "chosen by the customer after the bank offered, and the customer refused, a security procedure that was commercially reasonable for that customer." *See* Cal. Comm. Code § 11202(c). The TAC does not allege that Plaintiffs rejected a commercially reasonable security procedure

pursuant to § 11204(a) "may not otherwise be varied by agreement." Cal. Com. Code § 11204(b).

BANA next raises arguments that take issue with the factual claims in Plaintiffs' TAC. For example, they argue that Plaintiffs' reliance on FFIEC guidance is insufficient to argue that their security measures are not commercially reasonable. *See* (Mot. at 18). However, the Court declines to address such arguments on a motion to dismiss, where all allegations in the TAC are taken as true and all reasonable inferences are drawn in favor of Plaintiffs. *See Manzarek*, 519 F.3d at 1031. Similarly, raised for the first time in its Reply, BANA argues that the security procedures outlined in the Online Agreement are, in fact, commercially reasonable, especially as to allegedly fraudulent transactions of $1,000 or less. (Reply at 20–21); *see also* (Reply at 23–24 (arguing that the TAC fails to allege that BANA did not implement multi-factor authentication)). Notwithstanding that these arguments were not raised in the Motion, they are disputes of fact more appropriately addressed on a motion for summary judgment or during trial with a more developed factual record.

Additionally, BANA argues that the Online Agreement has validly limited the extent to which BANA is entitled to enforce the allegedly fraudulent payment orders under California Commercial Code § 11203(a)(1), by setting a deadline to report unauthorized transactions 60 days from the date of the statement showing the unauthorized transaction. (Mot. at 19). However, the exception identified by BANA in § 11203(a)(1) only applies if a payment order is not authorized, but nonetheless effective. *See* Cal. Comm. Code § 11203(a)(1) ("The following rules apply" "[i]f an accepted payment order is not, under subdivision (a) of Section 11202, an authorized order of a customer identified as a sender, but is effective as an order of the customer pursuant to subdivision (b) of Section 11202."). Here, however, the TAC alleges that the fraudulent transactions were neither authorized nor effective because BANA has failed to implement reasonable security procedures. *See*

---

offered by BANA and "expressly agreed" to another one chosen by Plaintiffs. *See id.* This section is thus inapplicable to the TAC.

Cal. Comm. Code § 11204(b) (stating that unauthorized payment orders are nonetheless "effective as an order of the customer" if the bank and the customer agreed to verification through security procedures that were "commercially reasonable" and "the bank proves that it accepted the payment order in good faith and in compliance with the bank's obligations under the security procedure").

Finally, BANA argues that the TAC does not plead that the "imposter obtained Plaintiffs' personal information from BANA in the first instance," as it argues would be required by California Commercial Code § 11203(a)(2). (Mot. at 20). However, § 11203(a)(2) applies if a bank has, in good faith, verified a payment order in compliance with an agreed-upon and commercially reasonable security procedure. *See* UCC § 4A-203, cmt. 5 ("An exception to [the risk of loss being placed on the customer under Section 4A-202(b)] is provided by Section 4A-203(a)(2). The customer may avoid the loss resulting from such a payment order if the customer can prove that the fraud was not committed by a person described in that subsection."). Here, Plaintiffs have alleged that the security procedures employed by BANA are not commercially reasonable. *See* (TAC ¶¶ 73, 75).

For the foregoing reasons, the Court finds the TAC has sufficiently pleaded a short and plain statement demonstrating Plaintiffs are entitled to relief under Rule 8 for their Division 11 claim.[6]

---

[6] Raised for the first time on its Reply, BANA argues that the Online Agreement does not apply to "agent assisted transfers" made from Plaintiff Danhong Chen's accounts. (Reply at 19). The TAC, however, alleges that it does. *See* (TAC ¶ 74). And the language cited by BANA in the Online Agreement does not contradict the TAC. Instead, the Online Agreement states only that it applies to "use of any online or mobile banking services." *See* (Online Agreement at 4). The TAC is silent as to whether the "agent assisted transfers" happened online, via mobile device, or otherwise. Drawing all inferences in favor of Plaintiffs, and taking all allegations as true, the Court finds that the TAC sufficiently states that the Online Agreement applies to "agent-assisted transfers." Defendants may address the issue again on summary judgment if they contest the facts as alleged in the TAC.

## IV. CONCLUSION

For the foregoing reasons, the Court DENIES Defendants' Motion.

**IT IS SO ORDERED.**

DATED: August 12, 2025

HON. SHERILYN PEACE GARNETT
UNITED STATES DISTRICT JUDGE