CHRISTOPHER FROST (SBN 200336)
chris@frostllp.com
LAWRENCE J.H. LIU (SBN 312115)
lawrence@frostllp.com
BENJAMIN GRUSH (SBN 335550)
bgrush@frostllp.com
KEVIN SALMASSY (SBN 357161)
kevin1@frostllp.com
FROST LLP
10960 Wilshire Boulevard, Suite 2100
Los Angeles, California 90024
Telephone: (424) 254-0441
Facsimile: (424) 600-8504

Attorneys for Plaintiffs SHANGJIN
CHEN and DANHONG CHEN

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| SHANGJIN CHEN, an individual; and DANHONG CHEN, an individual, <br><br> Plaintiffs, <br><br> vs. <br><br> JPMORGAN CHASE BANK, N.A., a New York corporation; BANK OF AMERICA, N.A., a Delaware corporation; MERRILL LYNCH, PIERCE, FENNER & SMITH INC., a Delaware corporation; and DOES 1 through 10, inclusive, <br><br> Defendants. | Case No. 2:23-cv-10874-SPG-AS <br><br> *Hon. Sherilyn Peace Garnett* <br><br> **PLAINTIFFS' NOTICE OF MOTION AND MOTION TO MODIFY SCHEDULING ORDER AND REOPEN DISCOVERY; MEMORANDUM OF POINTS AND AUTHORITIES** <br><br> [Fed. R. Civ. P. 16(b)(4); ECF No. 20-1] <br><br> [*Filed concurrently with Declarations of Lawrence J.H. Liu and Shangjin Chen; [Proposed] Order*] <br><br> Date: October 8, 2025 <br> Time: 1:30 p.m. <br> Ctrm: 5C <br><br> Compl. filed: November 22, 2023 <br> Trial Date: None Set |

**TO ALL PARTIES AND TO THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** that on October 8, 2025, at 1:30 p.m., or as soon thereafter as counsel may be heard, in the United States District Court, Central District of California, Western Division, First Street Courthouse, Courtroom 5C, before the Honorable Sherilyn Peace Garnett, judge presiding, Plaintiffs Shangjin Chen and Danhong Chen (together, "Plaintiffs") will and hereby do move this Court for an order modifying the Scheduling Order (ECF No. 20-1) and reopening discovery (the "Motion").

This Motion is made pursuant to Federal Rules of Civil Procedure and 16(b)(4), and based upon the following grounds:

1.      Good cause exists to modify the Scheduling Order and reopen discovery given that the expert discovery deadline and trial and pretrial dates have been reset, and pleading disputes, while partially resolved, remain pending. In particular, Defendant Bank of America's ("BANA") Motion to Dismiss the Third Amended Complaint ("TAC") was recently denied on August 12, 2025, and BANA has just recently filed its Answer to the TAC on August 26, 2025. (ECF Nos. 99, 103.) Meanwhile, Plaintiffs' Motion for Leave to File a Fourth Supplemental and Amended Complaint has been fully briefed and is set for hearing on September 10, 2025. (ECF Nos. 90, 100.)

2.      Good cause exists to reopen discovery based on previously unresolved, as well as new factual disputes that have arisen regarding the amended allegations in the TAC and Defendants' Answers. Specifically, (a) BANA has disputed the alleged Deposit Agreement language governing security procedures for in-person transactions made on Shangjin's accounts; (b) Defendants have stated that they lack information or belief as to when Plaintiffs reported the fraudulent transactions to their bank representatives; (c) Defendants have stated that they lack information or belief as to specific disputed transactions made on Plaintiffs' accounts; (d) Defendants have disputed the security procedures that were in effect and that were applied to the

numerous transactions; (e) Defendants have disputed that the disputed transactions on Plaintiffs' accounts were fraudulent or unauthorized; and (f) Defendants have refused to provide any information or documents underlying their investigations into Plaintiffs' fraud claims.

3.      Good cause exists to reopen discovery as Defendants will not suffer any prejudice, given that the parties did not complete the necessary discovery prior to the original discovery cutoff on September 30, 2024. (ECF No. 20-1.) To date, no depositions have been taken, Defendants have not produced any documents, and issues involving discovery responses remain unresolved, and thus Defendants will not be burdened by any duplicative discovery.

This Motion is based on this Notice of Motion, the attached Memorandum of Points and Authorities, the Declarations of Lawrence J.H. Liu and Shangjin Chen filed concurrently herewith, all of the pleadings, files, and records in this proceeding, all other matters of which the Court may take judicial notice, and any argument or evidence that may be presented to or considered by the Court prior to its ruling.

Pursuant to Local Rule 7-3 and Paragraph G.1. of this Court's Standing Order for Newly Assigned Civil Cases, prior to filing this Motion, Plaintiffs met and conferred with counsel for Defendants on July 8, 2025, via videoconference, to discuss thoroughly the substance of this Motion. Following this conference, the parties were unable to reach a resolution, thus necessitating this Motion. (Liu Decl. ¶¶ 25-28.) Defendants have further indicated in their recent filings that they intend to oppose Plaintiffs' request to reopen discovery. *See* BANA's Opp. Mot. for Leave at n.1 (ECF No. 94); Chase's Opp. Mot. for Leave at 13:12-18 (ECF No. 95).

1  DATED:  September 4, 2025        FROST LLP

2

3

4  By: _____

5      CHRISTOPHER FROST
       LAWRENCE J.H. LIU
6      BENJAMIN GRUSH
       KEVIN SALMASSY
7      Attorneys for Plaintiffs SHANGJIN CHEN
       and DANHONG CHEN
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# **TABLE OF CONTENTS**

**Page(s)**

I.   INTRODUCTION ............................................................................................... 1

II.  PROCEDURAL BACKGROUND ....................................................................... 2

    A.   Pleadings and Scheduling Orders ............................................................ 2

    B.   Discovery Issues ...................................................................................... 3

        1.   Defendants' Discovery .................................................................. 3

        2.   Plaintiffs' Discovery ..................................................................... 4

        3.   Informal Discovery Conference and Meet-and-Confer .................. 4

II.  LEGAL STANDARD ......................................................................................... 4

    A.   Good Cause to Modify Scheduling Order and Reopen Discovery ............ 5

III. ARGUMENT ..................................................................................................... 6

    A.   Plaintiffs Were Diligent in Timely Seeking to Reopen Discovery Once Defendants Answered the TAC ................................................................. 6

    B.   Trial Dates and Other Deadlines Are Not Set ......................................... 8

    C.   Defendants Will Not Be Prejudiced By Reopening Discovery .................. 9

        1.   The Parties Previously Contemplated An Extension to the Discovery Cutoff to Resolve Pending Discovery Issues .......................................................... 10

    D.   The Need for Additional Discovery Was Not Foreseeable in Light of the Time Allowed By the Court ..................................................................... 11

    E.   Discovery Will Lead to Critical Relevant Evidence ............................... 12

        1.   Additional Discovery Will Resolve Factual Disputes Regarding the Operative Security Agreements and Agreed Upon Security Measures ........................... 13

        2.   Additional Discovery Will Resolve Factual Disputes Regarding the Fraudulent Activity on Plaintiffs' Accounts and Damages ........................................... 15

        3.   Additional Discovery Will Resolve Factual Disputes Regarding Defendants' Acceptance of Payment Orders in Good Faith and Investigations Into Plaintiffs' Fraud Reports ................................................................................. 16

    F.   Any Delay By Prior Counsel Should Not Be Imputed to Plaintiffs .......... 18

IV. PLAINTIFFS' PROPOSED DISCOVERY IS NARROWLY-TAILORED ............. 23

V.  CONCLUSION ................................................................................................ 23

1

# <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

**Federal Cases**

4

5
*In re Cent. Eur. Indus. Dev. Co., LLC*,
   No. ADV 02-03278, 2005 WL 6960169 (B.A.P. 9th Cir.2005)..........................5

6

7
*City of Pomona v. SQM North America Corporation*,
   866 F.3d 1060 (9th Cir.2017).......................................................................8, 12

8

9
*Community Dental Servs. v. Tani*,
   282 F.3d 1164 (9th Cir.2002)......................................................................18, 22

10

11
*Facet Techs., LLC v. Lifescan Inc.*,
   No. 2:22-cv-01717-MCS-MAR, 2023 WL 6786859 (C.D. Cal.
   2023), *opinion clarified*, 2024 WL 305700 (C.D.Cal. 2024) ............................6

12

13
*Herman Miller, Inc. v. Blumenthal Distrib., Inc.*,
   No. LACV1704279JAKSPX, 2019 WL 1416472 (C.D. Cal. 2019) ..................5

14

15
*Irving Firemen's Relief & Ret. Fund v. Uber Techs.*,
   No. 17-CV-05558-HSG, 2018 WL 4181954 (N.D. Cal. 2018)..........................9

16

17
*Ivy Hotel San Diego, LLC v. Houston Cas. Co.*,
   No. 10CV2183-L BGS, 2011 WL 4914941 (S.D. Cal. 2011)..........................13

18

19
*Karcauskas v. Regreso Fin. Servs. LLC*,
   No. CV1509225FMORAOX, 2016 WL 11266870 (C.D. Cal. 2016) ...............12

20

21
*Lal v. California*,
   610 F.3d 518 (9th Cir. 2010)......................................................................18, 22

22

23
*Matrix Motor Co., Inc. v. Toyota Jidosha Kabushiki Kaisha*,
   218 F.R.D. 667 (C.D. Cal. 2003) ....................................................................18

24
*Mendia v. Garcia*,
   165 F. Supp. 3d 861 (N.D. Cal. 2016).............................................................9

25

26
*Mighty Enters. Inc. v. She Hong Indus. Co.*,
   No. 2:14-cv-06516-ODW-GJS, 2015 WL 13764130 (C.D. Cal.
   2015) ...............................................................................................................22

27

28

v

*Nat'l Fire Prot. Ass'n, Inc. v. UpCodes, Inc.*,
  No. 2:21-CV-05262-SPG-E, 2023 WL 6194396 (C.D. Cal. 2023) (J.
  Garnett) ..................................................................................................5, 6

*Nicholas v. Wallenstein*,
  266 F.3d 1083 (9th Cir.2001) (Tatima, J., concur.) ............................................5

*Pizana v. SanMedica Int'l LLC*,
  345 F.R.D. 469 (E.D. Cal. 2022) ..................................................................9

*San Bernardino Cnty. v. Ins. Co. of The State of Pennsylvania*,
  No. CV2101978PSGASX, 2023 WL 5670790 (C.D. Cal. 2023) ......................5

*Sanchez v. Seibel*,
  No. 5:15-CV-01901-R-DFM, 2019 WL 13038318 (C.D. Cal. 2019),
  *aff'd*, 830 F. App'x 943 (9th Cir.2020) ..................................................8

*Saroyan Lumber Co. v. El & El Wood Prods. Corp.*,
  126 F. App'x 371 (9th Cir.2005) ..................................................................4

*Sateriale v. R.J. Reynolds Tobacco Co.*,
  No. 2:09-CV-08394-CAS, 2015 WL 4162485 (C.D. Cal. 2015) ....................9

*Skellerup Indus. Ltd. v. City of Los Angeles*,
  163 F.R.D. 598 (C.D. Cal. 1995) ..................................................................9

*Soundgarden v. UMG Recordings, Inc.*,
  No. CV1905449-JAK, 2020 WL 4342261 (C.D. Cal. 2020) ........................5

*Varlitskiy v. Cnty. of Riverside*,
  No. EDCV192099JGBSPX, 2022 WL 17076085 (C.D. Cal. 2022),
  *aff'd sub nom. Varlitskiy v. Campos*, No. 23-55426, 2024 WL
  1574347 (9th Cir.2024) ..................................................................7, 10

*In re Villegas*,
  132 B.R. 742 (B.A.P. 9th Cir.1991) ..................................................................7

*Williams v. United Elec.*,
  No. 2:20-cv-09957-SSS-MRWx, 2023 WL 4155405 (C.D. Cal.
  2023), *reconsideration denied sub nom. Williams v. United Elec.*,
  2023 WL 5423024 ..................................................................18

**Federal Cases (continued)**

*Martirosyan v. Baries*,
    No. 2:21-cv-6433-PA-MAR, 2022 WL 20273563 (C.D. Cal. 2022) ..................6

**Federal Statutes**

15 U.S.C.
    § 1693, *et seq.* ...............................................................................................16
    § 1693f.................................................................................................16, 18

**California Statutes**

Cal. Comm. Code Division 11
    § 11101 ...........................................................................................................7
    § 11202 ............................................................................................14, 16, 18
    § 11203 .........................................................................................................16

Electronic Fund Transfer Act ...................................................................................16

**Other Authorities**

12 C.F.R. § 1005.1 ...................................................................................................16

Fed. R. Civ. P. 16(b)(4).............................................................................................5

Fed. R. Civ. P. 26(d)(1).............................................................................................7

Fed. R. Civ. P. 34(b)(2)...........................................................................................19

PLAINTIFFS' MOTION TO MODIFY SCHEDULING ORDER AND REOPEN DISCOVERY

## <u>MEMORANDUM OF POINTS AND AUTHORITIES</u>

**I.    INTRODUCTION**

Plaintiffs Shangjin Chen and Danhong Chen ("Plaintiffs") bring this instant Motion to Modify the Scheduling Order and to Reopen Discovery.

Pursuant to the Court's March 5, 2025, Scheduling Order, fact discovery ended on <u>September 30, 2024</u>. (ECF No. 20-1 ["Scheduling Order"].) Just two days after the Scheduling Order, however, the parties began a prolonged period of pleading disputes still yet to be fully resolved. In total, Defendants filed four motions to dismiss, which have led to a cascade of further amended pleadings and subsequent rulings leading to new, developing, and unresolved factual disputes.

In its recent Order denying the last of Defendants' motions to dismiss, the Court acknowledged numerous factual disputes that are "more appropriately addressed on a motion for summary judgment or during trial[,]" which contemplated the need for "a more developed factual record." (ECF No. 99 at 18:12-15.). Currently, Plaintiffs' Motion for Leave to File Fourth Supplemental and Amended Complaint ("Motion for Leave") (ECF No. 90) is set to be heard on September 10, 2025. (ECF No. 100). In the meantime, expert discovery deadlines and the trial date are vacated. (ECF Nos. 73, 75.) The parties are currently meeting and conferring on an amended pretrial and trial schedule but have not yet filed a joint report proposing new dates.

Whether the TAC or Fourth Supplemental and Amended Complaint ("4SAC") is the operative pleading, new and unresolved factual issues warrant additional discovery in this case. Discovery is necessary to obtain and confirm Defendants' operative consumer agreements, Plaintiffs' bank records, and documents and information underlying Defendants' investigations into Plaintiffs' fraud complaints. Moreover, discovery is required so that the parties can proceed with depositions of previously noticed corporate and fact witnesses, including Plaintiffs themselves.

Prior to the discovery cutoff, the parties proposed an extension to the discovery deadline, however, they failed to finalize details and file the stipulation before the

cutoff. Accordingly, with the TAC now the operative pleading, and BANA's Answer recently filed on August 26, 2025, this Motion to reopen discovery is now ripe for the Court's consideration.

**II.    PROCEDURAL BACKGROUND**

    **A.    Pleadings and Scheduling Orders**

On November 22, 2023, Plaintiffs filed their initial Complaint against Defendants in Los Angeles County Superior Court. The case was removed to this Court on December 29, 2023. (ECF No. 1.) Plaintiffs' First Amended Complaint ("FAC") was filed on February 15, 2024. (ECF Nos. 14, 18.)

The Court entered a Pretrial Scheduling Order on March 5, 2024, which set fact discovery cutoff for <u>September 30, 2024</u>.  (ECF Nos. 20, 20-1.) On March 7, just two days later, Defendants filed two separate Motions to Dismiss the FAC, which were granted with leave to amend on August 20, 2024. (ECF Nos. 23, 24, 36.)

On September 3, 2024, Plaintiffs filed their Second Amended Complaint ("SAC"). (ECF No. 39.) In response, on September 25, 2024, Defendant Chase filed an Answer, while BANA filed a Motion to Dismiss the SAC. (ECF Nos. 44, 45.) On April 21, 2025, the Court granted BANA's Motion with leave to amend. (ECF No. 76.)

On December 19, 2024, the Court granted the parties' stipulation to continue the pretrial and trial schedule, extending the expert discovery deadline until February 28, 2025, and vacating all pretrial and trial dates. (ECF No. 69.) On January 15, 2025, the Court granted the parties' stipulation to vacate the expert discovery deadline pending resolution of BANA's Motion to Dismiss the SAC. (ECF No. 73.)

On April 17, 2025, the Court vacated the original pretrial scheduling conference set for April 23, 2025, and trial date set for May 13, 2025. (ECF No. 75.) The Court reiterated that the dates were vacated in its Order granting BANA's Motion to Dismiss the SAC on April 21, 2025. (ECF No. 76.)

On May 8, 2025, Undersigned Counsel substituted into this case. (ECF Nos. 79, 80.) On June 2, Plaintiffs filed their TAC. (ECF No. 83.) On June 12 to 13 respectively,

Chase filed an Answer (ECF No. 84) and BANA filed a Motion to Dismiss the TAC (ECF No. 85).

On July 24, 2025, while BANA's Motion to Dismiss the TAC was pending, Plaintiffs filed a Motion for Leave to File a Fourth Supplemental and Amended Complaint ("Motion for Leave"). (ECF No. 90.) On August 12, 2025, the Court denied BANA's latest Motion to Dismiss. (ECF No. 99.) BANA filed its Answer on August 26, 2025. (ECF No. 103.) Plaintiffs' Motion for Leave remains set to be heard on September 10, 2025. (ECF No. 100.)

### B.    Discovery Issues

#### 1.    Defendants' Discovery

On July 30, 2024, Defendants Merrill and BANA served six sets of written discovery on Plaintiffs, consisting of Interrogatories, Requests for Admissions (RFAs), and Requests for Production of Documents (RFPs) to Plaintiffs. (Liu Decl. ¶ 5.) On August 27, 2024, Chase separately served a total of four sets of written discovery, consisting of Interrogatories and RFPs to Plaintiffs. (Liu Decl. ¶ 6.)

On August 29, 2024, through their Prior Counsel, Plaintiffs responded to Merrill and BANA's requests. (Liu Decl. ¶ 7.) On September 26, 2024, Plaintiffs responded to Chase's requests. (Liu Decl. ¶ 8.) On September 30, 2024, Plaintiffs served supplemental responses to BANA and Merrill's requests. (Liu Decl. ¶ 9.) Plaintiffs produced 77 pages of documents in response to Defendants' RFPs, consisting of Plaintiffs' bank statements, police reports, and identification cards. (Liu Decl. ¶ 10.)

On August 28, 2024, Chase served Plaintiffs notices for in-person depositions set for September 23, and 24, 2024, containing additional RFPs. (Liu Decl. ¶ 11.) Plaintiffs served objections to the deposition notices on or around September 13 and 19, stating Plaintiffs were in China and unavailable at the date, time, and location as noticed; however, Plaintiffs would meet and confer on mutually agreeable dates. (Liu Decl. ¶ 12.) In subsequent meet-and-confer emails, Plaintiffs provided available dates in mid-October 2024 for in-person depositions. (Liu Decl. ¶ 13.)

### 2.    **Plaintiffs' Discovery**

On August 30, 2024, Prior Counsel served Plaintiffs' first sets of RFPs, RFAs, and Interrogatories. (Liu Decl. ¶ 14.) On or around September 10 and 11, 2024, Prior Counsel served deposition notices under Rule 30(b)(6) with corresponding RFPs to Chase and BANA, scheduled for September 24, and 26. (Liu Decl. ¶ 15.)

On September 30, 2024, Defendants responded to Plaintiffs' discovery requests. (Liu Decl. ¶ 16.) In most their responses to Plaintiffs' RFPs, BANA and Merrill stated they would only produce documents subject to a stipulated protective order and meet and confer "if discovery continues." (Liu Decl. ¶ 17, Exs. A, B.) Chase responded similarly. (Liu Decl. ¶ 18, Ex. C.)

### 3.    **Informal Discovery Conference and Meet-and-Confer**

On September 26, 2024, the parties appeared before Magistrate Judge Sagar for an Informal Discovery Conference (IDC). Plaintiffs' Prior Counsel represented that the parties would continue to meet and confer and resolve the issues informally. (*See* ECF No. 52.) By September 30, the date of the discovery cutoff, the parties did not reach an agreement on many of the unresolved discovery issues including a stipulation to extend the discovery cutoff. (Liu Decl. ¶ 20.) In addition, Defendants provided incomplete and evasive responses to Plaintiff's discovery requests while producing zero documents. (Liu Decl. ¶ 21.)

To date, no depositions have been taken and Defendants have not produced any responsive documents. (Liu Decl. ¶ 24.) Meanwhile, Plaintiffs supplemented their written discovery responses, offered available dates for in-person depositions, and agreed to narrow the scope of document requests in their deposition notices to Defendants. (Liu Decl. ¶ 25.)

## II.    <u>LEGAL STANDARD</u>

"District courts have broad discretion in managing their dockets and enforcing their scheduling orders." *Saroyan Lumber Co. v. El & El Wood Prods. Corp.*, 126 F.

App'x 371, 372 (9th Cir.2005); *see also Soundgarden v. UMG Recordings, Inc.*, No. CV1905449-JAK (MRWx), 2020 WL 4342261, at *3 (C.D. Cal. 2020).

"Under Rule 16, motions to reopen motion practice or discovery are granted or denied at the sound discretion of the district court." *San Bernardino Cnty. v. Ins. Co. of The State of Pennsylvania*, No. CV2101978PSGASX, 2023 WL 5670790, at *2 (C.D. Cal. 2023) (citing *United States ex rel. Schumer v. Hughes Aircraft Co.*, 63 F.3d 1512, 1526 (9th Cir.1995); *see also Herman Miller, Inc. v. Blumenthal Distrib., Inc.*, No. LACV1704279JAKSPX, 2019 WL 1416472, at *5 (C.D. Cal. 2019). "[S]uch case management and scheduling is within the control of the trial judge and will not be disturbed, absent an abuse of discretion." *Nicholas v. Wallenstein*, 266 F.3d 1083, 1089 (9th Cir.2001) (Tatima, J., concur.); *see also In re Cent. Eur. Indus. Dev. Co., LLC*, No. ADV 02-03278, 2005 WL 6960169, at *3 (B.A.P. 9th Cir.2005) ("Appellate review of a district court's case-management decision, such as whether to grant or deny relief from scheduling orders, is solely for abuse of discretion.").

**A.    <u>Good Cause to Modify Scheduling Order and Reopen Discovery</u>**

"Pretrial scheduling orders may be modified for 'good cause.'" *Nat'l Fire Prot. Ass'n, Inc. v. UpCodes, Inc.*, No. 2:21-CV-05262-SPG-E, 2023 WL 6194396, at *2 (C.D. Cal. 2023) (J. Garnett) (citing Fed. R. Civ. P. 16(b)(4)). "'Good cause' is a <u>non-rigorous standard</u> that has been construed broadly across procedural and statutory contexts." *Id.* (quoting *Ahanchian v. Xenon Pictures, Inc.*, 624 F.3d 1253, 1259 (9th Cir.2010)) (emphasis added).

The "good cause" analysis weighs a variety of factors, including:

> 1) whether trial is imminent,
>
> 2) whether the request is opposed,
>
> 3) whether the non-moving party would be prejudiced,
>
> 4) whether the moving party was diligent in obtaining discovery within the guidelines established by the court,

5) the foreseeability of the need for additional discovery in light of the time allowed for discovery by the district court, and

6) the likelihood that the discovery will lead to relevant evidence.

*Id.* (citing *City of Pomona v. SQM North America Corporation*, 866 F.3d 1060, 1066 (9th Cir.2017) ("*Pomona*")) (citation modified).

"While no one factor is necessarily dispositive, the Ninth Circuit has instructed that the primary focus should be on whether the party seeking to reopen discovery has acted diligently." *Id.* (citing *De Paz v. Wells Fargo Bank, N.A.*, No. 18-cv-09779-PSG (PJWx), 2020 WL 2404897, at *2 (C.D. Cal. 2020); *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 609 (9th Cir.1992)). "Motions are more often granted when the opposing party's actions caused delay or when the need to amend arises from some unexpected or outside source." *Facet Techs., LLC v. Lifescan Inc.*, No. 2:22-cv-01717-MCS-MAR, 2023 WL 6786859, at *1 (C.D. Cal. 2023), *opinion clarified*, 2024 WL 305700 (C.D.Cal. 2024) (quoting *Johnson v. Merck & Co.*, No. 2:20-cv-00138-KJM-DB, 2022 WL 229860, at *2 (E.D. Cal. 2022)).

## III.  <u>ARGUMENT</u>

Good cause exists to modify the Scheduling Order and reopen discovery given that no trial date has been set and pleadings remain at issue; Defendants will not suffer any prejudice; and additional discovery is necessary for all parties. Moreover, Plaintiffs have acted diligently in seeking to modify the scheduling order after the TAC was filed, BANA's Motion to Dismiss was denied, and both Chase and BANA have now answered the TAC.

### A.  <u>Plaintiffs Were Diligent in Timely Seeking to Reopen Discovery Once Defendants Answered the TAC</u>

The primary factor—diligence, should weigh in favor of Plaintiffs' motion to reopen discovery. "Discovery is considered premature when the case is still in the pleadings stage." *Martirosyan v. Baries*, No. 2:21-cv-6433-PA-MAR, 2022 WL

20273563, at *1 (C.D. Cal. 2022) (citing Fed. R. Civ. P. 26(d)(1)). "Pleadings are not closed until at least an answer has been filed." *In re Villegas*, 132 B.R. 742, 745 (B.A.P. 9th Cir.1991). "An answer should contain whatever denials and defenses are necessary to refute the material allegations of the complaint. Its function is to put the case 'at issue' as to all important matters alleged in the complaint that the defendant does not want to admit." Rutter Group, Fed. Civ. P. Before Trial (Calif. & 9th Cir. ed.), Ch. 8-D, ¶ 8:880 (Apr. 2025).

Following BANA's recently filed Answer on August 26, 2025 (ECF No. 103), the pleadings are finally set and the case is now *at issue*. New factual disputes, including denials in Defendants' recently-filed Answers to the TAC (ECF Nos. 84, 103) and arguments raised in BANA's Motion to Dismiss (ECF Nos. 85, 88), warrant the reopening of discovery. *See Varlitskiy*, 2022 WL 17076085, at *4 (granting motion to reopen discovery and finding that plaintiff acted diligently where ruling on motion to dismiss and new trial schedule orders had been pending for months).

The operative TAC alleges claims under Division 11 of the California Commercial Code (§§ 11101, *et seq.*) and includes new allegations with specific quoted language from each of the alleged security agreements with Defendants. (*See* ECF No. 83, ¶¶ 68, 73, 100.) The TAC contains new and specific allegations regarding the extent of fraudulent activity on each of Plaintiffs' accounts as well as extensive supporting documentation attached as exhibits. (*Id.* at ¶¶ 23, 24, 26, 30-40, 48-50; Exs. 1-6.) The TAC also contains new allegations regarding Plaintiffs' actions in reporting such fraud claims to Defendants, and Defendants' inadequate responses to Plaintiffs regarding the results of their investigations. (*Id.* at ¶¶ 25-29, 42-47, 53-55, Exs. 7-14.)

In their recently filed Answers, BANA answered 63 paragraphs and Chase answered 91 paragraphs, in which they denied allegations based on a lack of sufficient information and knowledge "at this time." (*See generally*, ECF Nos. 84, 103.) Moreover, Defendants have denied allegations regarding their operative security agreement procedures quoted in the TAC—issues central to Plaintiffs' Division 11

FROST

claims. (ECF No. 84, at ¶¶ 100, 102, 103; ECF No. 103 at ¶¶ 68, 69, 73, 74.) Such responses underscore the need for further discovery to resolve these factual disputes.

Defendants will argue that Plaintiffs waited too long before seeking to reopen discovery. But doing so prior to the pleadings being set would have been premature and impractical. Without the parties knowing the full scope of factual issues, Plaintiffs would have been forced to speculate on the necessary evidence to resolve them. Now that Defendants have Answered the TAC, Plaintiffs' request to reopen discovery is ripe, and the sixth factor (discussed below)—regarding whether such discovery would lead to relevant evidence—can be answered resoundingly in the affirmative. (*See infra*, § 3.E.)

**B.    Trial Dates and Other Deadlines Are Not Set**

The first *Pomona* factor weighs in favor of reopening discovery as there is no imminent trial date. The original dates for trial and pretrial scheduling conference were vacated on April 17, 2025, due to pending and prolonged motions to dismiss at the time. (ECF No. 75.) The expert discovery deadline was also vacated on January 15, 2025, when BANA's second Motion to Dismiss was pending. (ECF No. 73.) The Court further ordered the parties to file a joint status report proposing a new pretrial and trial schedule, including a new deadline for expert discovery, within 21 calendar days of the Court's decision on the Motion to Dismiss the SAC. (*Id.*) The joint status report has not yet been submitted due to BANA's subsequent Motion to Dismiss the TAC. (ECF No. 85.) Following the Court's denial of the latest Motion to Dismiss and BANA's filing of its Answer to the TAC, the parties are currently meeting and conferring on proposed new trial and pretrial dates. (Liu Decl. ¶ 56.)

Just as trial and other related dates were vacated pending the motions to dismiss, good cause existed to delay moving to reopen discovery pending the resolution of all pleading issues. *See Sanchez v. Seibel*, No. 5:15-CV-01901-R-DFM, 2019 WL 13038318, at *1 (C.D. Cal. 2019), *aff'd*, 830 F. App'x 943 (9th Cir.2020) ("Good cause exists to stay discovery while a motion to dismiss is or will be pending.") Indeed, courts

have found it impractical and wasteful for the parties to attempt fact discovery without knowing the full scope of claims and factual issues prior to the operative pleadings being set. *See Irving Firemen's Relief & Ret. Fund v. Uber Techs.*, No. 17-CV-05558-HSG, 2018 WL 4181954, at *9 (N.D. Cal. 2018) ("Allowing further discovery in the absence of a well-pleaded complaint also risks unnecessarily expending the resources of the Court and the parties."); *Skellerup Indus. Ltd. v. City of Los Angeles*, 163 F.R.D. 598, 601 (C.D. Cal. 1995) (sufficiency of pleadings among relevant factors considered in determining whether to stay discovery pending a dispositive motion).

Given the importance of resolving pleading issues prior to conducting discovery, as well as the recently amended claims in either the operative TAC or proposed 4SAC, the fact that a stay had not been issued prior to the cutoff of discovery should not preclude reopening discovery now.

### C. <u>Defendants Will Not Be Prejudiced By Reopening Discovery</u>

While Defendants stated that they will oppose this Motion, the third factor regarding prejudice weighs in favor of Plaintiffs. "[N]either delay resulting from the proposed amendment nor the prospect of additional discovery needed by the non-moving party in itself constitutes a sufficient showing of prejudice." *Mendia v. Garcia*, 165 F. Supp. 3d 861, 874 (N.D. Cal. 2016) (quoting *Tyco Thermal Controls LLC v. Redwood Indus.*, 2009 WL 4907512, at *3 (N.D. Cal. 2009)); *see also Sateriale v. R.J. Reynolds Tobacco Co.*, No. 2:09-CV-08394-CAS, 2015 WL 4162485, at *3 (C.D. Cal. 2015) (granting motion to reopen discovery where proposed discovery was relevant to claims and there was sufficient time for conducting expert discovery before trial).

First, prior to the discovery cutoff, Defendants had already agreed to produce documents, exchanged proposals to extend the discovery cutoff, and met and conferred on a variety of resolvable discovery issues. (Liu Decl. ¶¶ 19, 22, 25, Exs. A-C.) Second, Defendants have not spent *any* significant time, expense, or effort on discovery, so there is no risk that prior efforts will be duplicated or wasted. *See Pizana v. SanMedica Int'l LLC*, 345 F.R.D. 469, 483 (E.D. Cal. 2022) (no prejudice where defendant failed

to show how proposed amended claims would necessitate duplication of discovery efforts, but rather, "significant overlap among the proposed amendments ... may reduce the time and expense needed with respect to conducting additional discovery."). Defendants have failed to produce *any* documents in response to Plaintiffs' RFPs, and *no* depositions have been taken. (Liu Decl. ¶ 24.)[1]

Third, any additional discovery would be narrowly tailored, helpful to the Court and the jury, and would result in greater efficiency. Any prejudice to Defendants would be substantially outweighed by the strong policy of adjudicating disputes on the merits. *See Varlitskiy v. Cnty. of Riverside*, No. EDCV192099JGBSPX, 2022 WL 17076085, at *4 (C.D. Cal. 2022), *aff'd sub nom. Varlitskiy v. Campos*, No. 23-55426, 2024 WL 1574347 (9th Cir.2024) ("reopening discovery would get closer to ... the rightful decision of this case[.]"). Thus, Defendants cannot demonstrate prejudice where discovery was not meaningfully conducted because the pleadings have been at issue for over a year.

### 1.    The Parties Previously Contemplated An Extension to the Discovery Cutoff to Resolve Pending Discovery Issues

At the last Informal Discovery Conference (IDC) on September 26, 2024, the parties were willing to stipulate to an extension of the September 30th discovery cut-off. Prior Counsel stated: "[I]n terms of the discovery cutoff, I think during the meet and confer, both sides agreed to extend, and we thought filing a formal stipulation would suffice." (IDC Hr'g. Tr. at 8:3-8, ECF No. 52.) Counsel for BANA and Merrill confirmed: "There is some agreement between the parties that an extension or stipulated extension may be possible." (*Id.* at 8:22-23.)

---

[1] On July 24, 2025, in response to Plaintiffs' letter dated June 17, 2025, which requested documents under the EFTA, Chase provided just three months' of Plaintiff Shangjin's bank statements (12 pages). BANA and Merrill have thus far refused to provide any documents in response to Plaintiffs' demand letters. (Liu Decl. ¶¶ 54, 55.)

Magistrate Judge Sakar acknowledged the potential extension to the discovery cut-off, stating: "I do encourage the parties, . . . if you're able to agree to request . . . an extension of – of your discovery cutoff date to complete the discovery that still needs to be done and issues arise with respect to that, then I would encourage you to avail yourself with the informal discovery conference procedure." (*Id.* at 12:14-19.) Judge Sakar ordered that "[t]he parties are encouraged to continue to meet and confer on their outstanding discovery disputes, and to consider submitting a joint stipulation to extend the fact discovery cut-off date (currently set for September 30, 2024), or joint request to modify the Scheduling Order in order to complete discovery and, if necessary, bring any discovery disputes to the Court's attention." (ECF No. 49 at 1.)

On September 27, 2024, counsel for BANA and Merrill circulated a proposal to extend the discovery cutoff to November 15, 2024. Plaintiffs' Prior Counsel, however, failed to respond until October 1, 2024, at which point BANA and Merrill withdrew their proposal. (Liu Decl. ¶ 22, Ex. D.) Given that Defendants had already: (1) responded to Plaintiffs' written discovery agreeing to produce documents (subject to a protective order); (2) contemplated extending the discovery cutoff; and (3) sought further responses to their discovery requests and available dates for Plaintiffs' depositions, Defendants cannot complain of prejudice by having to engage in the discovery that they proactively sought, agreed to provide, and were otherwise required to perform.

**D.    The Need for Additional Discovery Was Not Foreseeable in Light of the Time Allowed By the Court**

The fifth factor weighs in favor of reopening discovery. In the Joint Rule 26(f) Report filed on February 7, 2024, Defendants initially proposed a discovery cutoff of September 30, 2024. (ECF No. 15 at 8:17-20.) Defendants stated in the Joint Report that they were "unable to conclude at this time whether and to what extent any issues or claims may be determined by a motion to dismiss or motion for summary judgment."

(ECF No. 15 at 8:4-5.) Afterwards, Plaintiffs filed their FAC on February 15, 2024. (ECF No. 18.)

The Court adopted the parties' proposed deadlines in its Scheduling Order on March 5, 2024. (ECF No. 20-1.) Two days afterwards, Defendants moved to dismiss the FAC. (ECF Nos. 23, 24.) After successive amended complaints and motions to dismiss, both Defendants BANA and Chase have answered the operative TAC as of August 26, 2025. (ECF No. 103.) Plaintiffs' Motion for Leave to file their 4SAC still remains pending with the hearing set for September 10, 2025. (ECF No. 100.)

At the time of the Joint Rule 26(f) Report and Scheduling Order, Plaintiffs could not reasonably foresee that such pleading motions and subsequent amended pleadings would continue for well over a year and past the initially-proposed discovery deadline of September 30, 2024. Furthermore, the history of multiple amendments to Plaintiffs' claims and recent responses in Defendants' Answers made it impossible to determine the scope of additional discovery needed earlier. Accordingly, the lack of foreseeability regarding discovery at the time warrants reopening discovery now.

### E.    Discovery Will Lead to Critical Relevant Evidence

The sixth *Pomona* factor weighs heavily in favor of reopening discovery. In particular, allowing discovery is both relevant and necessary for determining factual issues in either the TAC or 4SAC, including: (1) the operative security agreements between the parties; (2) whether Defendants implemented and complied with commercially reasonable security measures; (3) to what extent fraudulent activity occurred on Plaintiffs' accounts; and (4) whether Defendants conducted a good faith investigation into Plaintiffs' fraud claims and their bases for concluding that no fraud occurred.

Such critical and relevant evidence is solely within the possession of Defendants and can only be obtained through the reopening of discovery. *See Karcauskas v. Regreso Fin. Servs. LLC*, No. CV1509225FMORAOX, 2016 WL 11266870, at *2 (C.D. Cal. 2016) (on class discovery: "[T]he better and more advisable practice is to

allow discovery, especially when the information is within the sole possession of the defendant."); *Ivy Hotel San Diego, LLC v. Houston Cas. Co.*, No. 10CV2183-L BGS, 2011 WL 4914941, at *8 (S.D. Cal. 2011) (on motion to compel: "Compelling need exists whenever 'information is within the exclusive control of the party from whom discovery is sought, regardless of whether the information might also be obtained from that party through depositions, interrogatories or document production.'").

       **1.**    **Additional Discovery Will Resolve Factual Disputes Regarding the Operative Security Agreements and Agreed Upon Security Measures**

New disputes exist as to the operative agreements between Plaintiffs and each Defendant, including the language governing commercially reasonable security procedures for each of Plaintiffs' accounts and the transactions to which such agreements applied.

In response to Paragraph 68 of the TAC, BANA admitted that "versions of BANA's Deposit Agreement and Disclosures (the 'Deposit Agreement') in effect from October 2022 to May 2023 applied to Plaintiffs' accounts for the period relevant to the Complaint, along with additional agreement incorporated therein by reference." (ECF No. 103.) In its Reply to the Motion to Dismiss, BANA disputed the Deposit Agreement language quoted in the TAC. (ECF No. 88 at 12:13-15 ["The Deposit Agreement the TAC relies upon did not become effective until 2 years after the alleged fraud on Plaintiffs' alleged fraud on Plaintiffs' accounts had ceased."].) In its Order denying BANA's Motion to Dismiss, the Court noted that such "factual dispute [] is inappropriate for resolution on a motion to dismiss, where the Court must take all properly pleaded factual allegations as true." (ECF No. 99, at 14:19-21.)

BANA deflected in its Answer as to whether the quoted security procedures of its agreements applied to the disputed transactions identified by Plaintiffs, stating only that the agreements speak for themselves or that the allegations are legal conclusions to which no response is required. (ECF No. 103 at ¶¶ 68, 69, 73, 74.) Chase also evaded

answering allegations about the security procedures provided in its Digital Services Agreement, and whether the quoted language applied to the fraudulent withdrawals and wire transfers made on Shangjin's Chase accounts; instead, Chase similarly responded only that the agreement "speaks for itself." (ECF No. 84, at ¶¶ 100, 102, 103.)

Both BANA and Chase denied allegations that the agreed-upon procedures were presented to Plaintiffs in prolix form and that they were neither informed of, nor offered any choice for alternative security procedures, but failed to explain what if any alternative choices were provided to Plaintiffs. (ECF No. 103 at ¶ 81; ECF No. 84 at ¶ 101.) BANA and Chase further denied allegations that their agreed-upon security measures were commercially unreasonable, but their Answers are devoid of any factual detail as to what security measures were actually implemented in connection with the disputed transactions on Plaintiffs accounts. (*See* ECF No. 103 at ¶¶ 83-86; ECF No. 84 at ¶¶ 104-111.) In its Reply to the Motion to Dismiss, BANA argued that its procedures under the Online Agreement were commercially reasonable as to wire transfers under $1000, and that the agreement "requires the use of one-time passcode or use of a pre-registered USB security key – before a transfer of any amount higher than $1000 can be made from Plaintiffs' accounts." (ECF No. 88 at 15:17-22.) Even if such procedures were deemed commercially reasonable, fact discovery is needed to determine whether BANA actually employed such measures in good faith. *See* Cal. Comm. Code § 11202(b).

Discovery is therefore both relevant and necessary to determine Defendants' agreed-upon security procedures, whether they were commercially reasonable, and if so, whether they were properly implemented. As to BANA, discovery is further necessary to resolve disputes regarding the operative version of the Deposit Agreement as well as any "additional agreement incorporated therein by reference" to confirm the parties' agreed-upon security procedures. (ECF No. 103 at ¶ 68.) Reopening fact

discovery would foster judicial economy and preserve resources by enabling the parties to move for summary judgment or proceed to trial based on a complete, factual record.

### 2.    Additional Discovery Will Resolve Factual Disputes Regarding the Fraudulent Activity on Plaintiffs' Accounts and Damages

Answering paragraph 24 of the TAC, BANA admitted that "the screenshots at Exhibit 1 appears [*sic*] accurately reflect the transactions that occurred on April 3 and April 18, 2023" but denied "that these transactions were fraudulent." (ECF No. 103.) In paragraph 25, BANA admitted that Danhong reported the fraudulent activity at a local BANA branch, but denied the remainder of the allegations based on lack of information and belief, including the location of the specific BANA branch and the identity of BANA's representative alleged in the TAC. (*Id.*)

Answering paragraph 34, BANA provided another evasive answer that a true and correct copy of Shangjin's checking account statement (Exhibit 5 of the TAC) "speaks for itself," without admitting to its genuineness, and denied based on lack of information and belief, allegations that the document reflected a series of unauthorized cash withdrawals, payment transfers, and purchases totaling $392,1897.56. (*Id.*) BANA evaded answering paragraph 35, which alleged that "the fraudster made a sequence of teller cash withdrawals and ATM withdrawals from multiple BANA locations throughout Los Angeles while specifically avoiding Shangjin's local Arcadia branch." Instead, BANA falsely asserted that "there are no allegations in Paragraph 35 directed at BANA and therefore no response is required." (*Id.* at ¶ 35.) Factual disputes exist with respect to the numerous examples of fraudulent withdrawals, payments, and purchases made on Shangjin's BANA checking account, which was alleged in paragraphs 36 through 41, to which BANA either denied the allegations or stated that it lacked information or belief and on such basis denied the allegations.

Chase similarly denied allegations relating to Shangjin's Chase accounts based on lack of information and belief, including whether Shangjin had opened a brokerage account (¶ 48); and whether a fraudster had deposited a fake check and made a series

of fraudulent transactions and withdrawals, including a $30,000 withdrawal from a local branch in November 7, 2022 (¶ 49), and a $80,000 wire transfer to an unknown account controlled by the fraudster (¶ 50). (ECF No. 84.) Finally, Chase provided an evasive answer as to whether "Shangjin notified Chase of the unauthorized transactions within one year of their occurrence." (*Id.* at ¶ 111.)

As the Court noted in its recent Order, BANA argued that under Cal. Comm. Code § 11203(a)(1), Plaintiffs were required to report unauthorized transactions within 60 days from receiving their statements—"However, the exception … only applies if a payment order is not authorized, but nonetheless effective." (ECF No. 99 at 18:20-24.) Accordingly, new disputed facts exist as to whether such disputed payment orders were "effective" under § 11203(a)(1). Reopening fact discovery is therefore necessary to confirm the extent of Plaintiffs' damages based on the unauthorized transactions on their bank accounts.

### 3. Additional Discovery Will Resolve Factual Disputes Regarding Defendants' Acceptance of Payment Orders in Good Faith and Investigations Into Plaintiffs' Fraud Reports

Under Division 11, BANA and Chase bear the burden of proving that they accepted the disputed payment orders "in good faith and in compliance with the bank's obligations under the security procedure." Cal. Comm. Code § 11202(b)(ii). Under the proposed 4SAC, Plaintiffs allege claims under the Electronic Fund Transfer Act ("EFTA" 15 U.S.C. § 1693, *et seq.*) and its implementing Regulation E (12 C.F.R. § 1005.1, *et seq.*). Plaintiffs' EFTA claims involve Defendants' failures to investigate Plaintiffs' fraud reports and to provide adequate written explanations and supporting documentation from their investigations upon request as required under 15 U.S.C. § 1693f(d). Defendants may be liable for treble damages if the Court finds that "the financial institution knowingly and willfully concluded that the consumer's account was not in error when such conclusion could not reasonably have been drawn from the evidence available to the financial institution at the time of its investigation[.]" 15

U.S.C. 1693f(e)(2). Thus, common evidence will resolve disputed facts relevant to both the currently pleaded Division 11 claims and proposed EFTA claims.

BANA denied allegations based on lack of information or belief relating to events that took place with BANA or Merrill representatives regarding Plaintiffs' Merrill accounts, despite Plaintiffs having alleged that such events occurred at BANA's local banking locations. (*See* BANA Answer at ¶¶ 26-31, ECF No. 103.) BANA denied allegations based on lack of information and belief as to allegations that Shangjin had visited his local BANA branch in Santa Anita, Arcadia; inquired about his account balance and activity; requested copies of his account statements from both BANA and Merrill but was refused; and that BANA's representatives initiated an investigation and informed him that a man posing as Danhong had opened up the fraudulent Merrill account. (*Id.* at ¶¶ 29, 43.)

BANA provided evasive answers to paragraphs 44 through 46 regarding their response letters to Plaintiffs, attached as Exhibits 8 through 11 to the TAC, which stated BANA concluded that the reported transactions were not fraudulent. (*Id.*) Finally, BANA alleges that it has "reimbursed Shangjin over $130,000 in response to his report of fraud" and that it "has no record of Plaintiffs requesting any information or documents pertaining to BANA's investigation in to the fraud that Plaintiffs reported to BANA prior to the filing of this litigation." (*Id.* at ¶ 47.)

Chase likewise evaded answering allegations regarding Shangjin's fraud report to his local Chase representative, Frank Lu, at the Arcadia branch location on May 24, 2025, and that Chase had informed him "that the fraudster had modified the email address information linked to Shangjin's Chase Accounts and deactivated his registered phone number, preventing him from receiving notifications about the fraudulent activities," stating only that it lacked sufficient information and belief at his time and on such basis, denied the allegations. (ECF No. 84 at ¶ 53.) Chase also denied having information and belief as to letters it had sent Shangjin regarding his fraud

PLAINTIFFS' MOTION TO MODIFY SCHEDULING ORDER AND REOPEN DISCOVERY

claims, including the genuineness of a letter sent on August 8, 2023, attached as Exhibit 14 to the TAC, stating only that each letter "speaks for itself." (*Id.* at ¶¶ 54, 55.)

Discovery is both necessary and relevant to determine the extent of Defendants' investigations into Plaintiffs' fraud claims, and the bases for their conclusions that no fraudulent activity had occurred. In particular, communications with Defendants' representatives, documents underlying their investigations, and documents and communications between the fraudster and Defendants, will assist the Court and the jury in determining whether Defendants accepted the payment transfers in good faith under Cal. Comm. Code § 11202(b)(ii), and whether Defendants had unreasonably concluded that no fraudulent activity had taken place with respect to certain transactions under 15 U.S.C. 1693f(e)(2).

### F.    Any Delay By Prior Counsel Should Not Be Imputed to Plaintiffs

While Plaintiffs contend that they had sought discovery prior to the discovery cutoff and have acted diligently in moving to reopen discovery once the pleadings were set, Defendants will argue that Plaintiffs should have moved to reopen discovery earlier. As explained in Plaintiffs' Motion for Leave (ECF No. 90), "[w]here the attorney has engaged in gross negligence, accountability is not placed on the client." *Williams v. United Elec.*, No. 2:20-cv-09957-SSS-MRWx, 2023 WL 4155405, at *2 (C.D. Cal. 2023), *reconsideration denied sub nom. Williams v. United Elec.*, 2023 WL 5423024; *Matrix Motor Co., Inc. v. Toyota Jidosha Kabushiki Kaisha*, 218 F.R.D. 667, 674 (C.D. Cal. 2003)). "If [a client can show] that [her] lawyers were guilty of gross negligence or abandonment, then . . . a finding of extraordinary circumstances or good cause, justifying a modification of the scheduling order, would be warranted." *Matrix Motor*, 218 F.R.D. at 674 (alterations in original). In two Ninth Circuit cases discussing the gross negligence standard, *Tani* and *Lal*, this was explained as "deliberately misle[ading] their clients and depriv[ing] them of the opportunity to take action to preserve their rights" and "explicitly represent[ing] to [their clients] that the case was proceeding properly." *Lal v. California*, 610 F.3d 518, 525 (9th Cir.2010)

("*Lal*") (citing *Community Dental Servs. v. Tani*, 282 F.3d 1164, 1171 (9th Cir.2002) ("*Tani*")) (citation modified).

Plaintiffs' prior counsel, Park LLP ("Prior Counsel"), failed to seek a stay of discovery or an extension to the fact discovery cutoff while multiple motions to dismiss and amended pleadings were pending. Such conduct constituted gross negligence that should not be imputed to Plaintiffs.[2] Most notably, after the Scheduling Order was issued on March 5, 2024 (ECF No. 20-1), Prior Counsel failed to conduct any fact discovery until August 30, 2024, when it served its first sets of written discovery on Defendants. (Liu Decl. ¶¶ 14, 32.) Given that the fact discovery cutoff on September 30, 2024, coincided with Defendants' 30-day deadline for responses, Prior Counsel failed to allot sufficient time to receive and review responses from Defendants, meet and confer on any deficient responses or document production, and file any discovery motions if necessary. *See* Fed. R. Civ. P. 34(b)(2)(A). Indeed, Defendants served responses on September 30, which included boilerplate objections, while refusing to produce any documents. (Liu Decl. ¶¶ 17, 18, 33, 34, Exs. A-C.)

Moreover, Prior Counsel belatedly served Rule 30(b)(6) deposition notices with additional requests for production of documents to Defendants on September 10, 11, and 12, unilaterally scheduling depositions for September 24, 26, and 27—less than a week before the discovery cutoff. (Liu Decl. ¶ 35.) On September 16, counsel for BANA and Merrill emailed Prior Counsel to meet and confer on objections to Plaintiffs' deposition notices, but Prior Counsel did not respond to Defendants' request until a full week later. (Liu Decl. ¶ 36.) On September 25, BANA and Merrill filed motions for protective orders regarding their unresolved objections to Plaintiffs' deposition notices. (ECF Nos. 47, 48.)

---

[2] A history of Prior Counsel's actions is further explained in the Declaration of Shangjin Chen, Declaration of Lawrence J.H. Liu (¶¶ 30-53), as well as Plaintiffs' Motion for Leave (ECF No. 90).

PLAINTIFFS' MOTION TO MODIFY SCHEDULING ORDER AND REOPEN DISCOVERY

From September 23, through the September 30th deadline, Prior Counsel agreed to supplement Plaintiffs' written discovery responses, withdraw document requests in connection with Plaintiffs' deposition notices, and provide Plaintiffs' availability for depositions, but at no point raised concerns regarding Defendants' written discovery responses that were not yet served and the inevitable need for more time to resolve any deficient responses or improper objections. (Liu Decl. ¶ 38.)

The parties engaged in a final IDC before Magistrate Judge Alka Sagar on September 26, 2025. Prior Counsel, however, represented to Judge Sagar that "the discovery issues have been resolved." (ECF No. 52, 3:13-15, 5:7-11) Judge Sagar informed the parties that because the parties did not jointly request the IDC and there would not be enough time prior to the discovery cutoff for her to resolve any pending discovery issues, she could only encourage the parties to continue to meet and confer to narrow the scope of issues. She emphasized, however, "if [the parties] are unable to reach an agreement, then it is imperative that they jointly request an extension of time – an extension of the discovery cutoff date or a modification of the Court's scheduling order before Judge Garnett to enable them to raise this issue with the Court." (*Id.* at 6:3-8.)

Prior Counsel inexplicably rejected Magistrate Judge Sagar's Orders, instead stating "… rather than, you know, going to a discovery conference or – or filing motions, I believe it's – it's much better to just meet and confer in good faith and try to work it out between the parties." (ECF No. 52, 8:9-15.) Despite these statements, Prior Counsel failed to meet and confer with Defendants' counsel on extending the discovery cutoff and to respond to Defendants' multiple emails regarding a proposed extension until after the deadline had already passed. (Liu Decl. ¶ 42.) Most importantly, Prior Counsel never attempted to secure a *formal* stipulation to extend the discovery cutoff, despite the Judge Sagar's orders. (Liu Decl. ¶¶ 22, 43, Ex. D.)

Meanwhile, Plaintiffs were continuously misled by their Prior Counsel's representations that the case was going smoothly as planned, that no active

participation was required from their part, and that Prior Counsel was actively and timely conducting discovery on Defendants. (Chen Decl. ¶ 23.)

Plaintiffs are Chinese nationals with limited English proficiency and have never been part of any U.S. litigation proceeding and lack familiarity or understanding of the U.S. legal system, much less federal court procedures. (Chen Decl. ¶ 21.) Indeed, Plaintiffs were not even timely made aware of the strict deadlines in the Court's Scheduling Order (ECF No. 20-1) as they were never provided a copy of the Order by Prior Counsel until around March 24, 2025, just a month before Prior Counsel expressly and prematurely informed them that they were withdrawing from the case. (Chen Decl. ¶ 32.) Nor were they informed by Prior Counsel of the significance of the discovery process and the September 30th discovery deadline until an email update from Prior Counsel on September 13th. In that email, Prior Counsel misinformed Plaintiffs that they had "taken proactive steps by serving discovery," which would be sufficient to "hold the banks accountable." (Chen Decl. ¶ 30.)

Throughout the history of Prior Counsel's communications with Plaintiffs, Prior Counsel deliberately mischaracterized their efforts and procedural developments as "winning," "successful," and "good news," despite having missed repeated deadlines and having lost on multiple motions to dismiss. (Chen Decl. ¶ 22.) Prior Counsel never informed Plaintiffs that they had only served written discovery 30 days before the discovery cutoff and thus failed to allot sufficient time for the parties to meet and confer on potentially deficient responses or document production, or that they had ample opportunity to timely seek an extension to the fact discovery cutoff but had failed to do so. (Chen Decl. ¶ 33.) Plaintiffs also never saw or had an opportunity to review Prior Counsel's written discovery requests before they were served on August 30, 2024. (Chen Decl. ¶ 26.) Nor did Plaintiffs receive copies of the complete pleadings and other filings in this case until April 24, 2025, when Prior Counsel abandoned the case by instructing Plaintiffs to seek new counsel and providing a link to their case file. (Chen Decl. ¶¶ 26, 36.)

Moreover, Prior Counsel lied about the true import of the Order granting BANA's Motion to Dismiss the SAC (ECF No. 76), stating that "the news is generally positive." In so mischaracterizing the Order, Prior Counsel intentionally concealed the fact that the Court had repeatedly found serious deficiencies in the pleadings and had ordered Plaintiffs one last opportunity to cure them. (Chen Decl. ¶ 37; Liu Decl. ¶ 49; ECF No. 76, 13:14-16, 16:9-10.) Like the attorneys in *Lal* and *Tani*, Prior Counsel deliberately misled Plaintiffs and deprived them of the opportunity to take action to preserve their rights, and further, explicitly misrepresented to them that the case was proceeding properly. *See Lal*, 610 F.3d at 525; *Tani*, 282 F.2d at 1171.

In March 2025, while BANA's Motion to Dismiss the SAC was still pending, Plaintiffs began diligently searching for new counsel. On or around May 5, 2025, Plaintiffs engaged FROST LLP, the undersigned counsel, to substitute as their new counsel of record. (Chen Decl. ¶¶ 31, 35, 39, Liu Decl. ¶ 2.) Yet, even after undersigned counsel's substitution in this case, Prior Counsel delayed in transferring the complete case file, requiring undersigned counsel to identify and repeatedly follow up for missing documents. (Liu Decl. ¶ 52.) Furthermore, despite there being no engagement finalized until May 5, Prior Counsel had not sought to extend Plaintiffs' May 12th deadline to file the TAC and did not undertake any work on the TAC, thus forcing new counsel to immediately seek a stipulation and order to extend the deadline once substitution was granted on May 8. (Liu Decl. ¶ 53, ECF No. 48.)

Plaintiffs have otherwise acted reasonably and diligently including seeking new counsel once it became apparent to them that Prior Counsel had missed critical deadlines and was deliberately misleading them. Plaintiffs' new counsel has acted diligently since their recent substitution. *See Mighty Enters. Inc. v. She Hong Indus. Co.*, No. 2:14-cv-06516-ODW-GJS, 2015 WL 13764130, at *3 (C.D. Cal. 2015) ("[T]he diligence with which ... new counsel is litigating this matter weighs slightly in favor of a finding of good cause.").

## IV. <u>PLAINTIFFS' PROPOSED DISCOVERY IS NARROWLY-TAILORED</u>

Plaintiffs seek an additional six months from an Order granting this Motion to complete the additional required discovery. Plaintiffs' discovery will be narrowly tailored to include depositions of both corporate designee and fact witnesses; production of Plaintiffs' bank records and agreements; information and documents relating to Defendants' security procedures; and information and documents underlying Defendants' investigations into Plaintiffs' fraud reports. Plaintiffs believe the additional six months' time is necessary to resolve remaining discovery disputes, including the potential need for protective orders and scheduling of Plaintiffs' depositions. Plaintiffs will continue to meet and confer with Defendants in good faith and are open to engaging in a further IDC with Judge Sagar if necessary.

## V. <u>CONCLUSION</u>

For the foregoing reasons, Plaintiffs respectfully request that the Court grant their Motion to Modify the Scheduling Order and Reopen Discovery.

DATED: September 4, 2025          FROST LLP


By: _____
CHRISTOPHER FROST
LAWRENCE J.H. LIU
BENJAMIN GRUSH
KEVIN SALMASSY
Attorneys for Plaintiffs SHANGJIN CHEN
and DANHONG CHEN

PLAINTIFFS' MOTION TO MODIFY SCHEDULING ORDER AND REOPEN DISCOVERY