CHRISTOPHER FROST (SBN 200336)
chris@frostllp.com
LAWRENCE J.H. LIU (SBN 312115)
lawrence@frostllp.com
BENJAMIN GRUSH (SBN 335550)
bgrush@frostllp.com
KEVIN SALMASSY (SBN 357161)
kevin1@frostllp.com
FROST LLP
10960 Wilshire Boulevard, Suite 2100
Los Angeles, California 90024
Telephone: (424) 254-0441
Facsimile: (424) 600-8504

Attorneys for Plaintiffs SHANGJIN CHEN and DANHONG CHEN

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| SHANGJIN CHEN, an individual; and DANHONG CHEN, an individual, <br><br> Plaintiffs, <br><br> vs. <br><br> JPMORGAN CHASE BANK, N.A., a New York corporation; BANK OF AMERICA, N.A., a Delaware corporation; MERRILL LYNCH, PIERCE, FENNER & SMITH INC., a Delaware corporation; and DOES 1 through 10, inclusive, <br><br> Defendants. | Case No. 2:23-cv-10874-SPG-AS <br><br> *Hon. Sherilyn Peace Garnett* <br><br> **DECLARATION OF LAWRENCE J.H LIU IN SUPPORT OF PLAINTIFFS' MOTION TO MODIFY SCHEDULING ORDER AND REOPEN DISCOVERY** <br><br> [*Filed concurrently with Plaintiffs' Notice of Motion; Memorandum of Points and Authorities; Declaration of Shangjin Chen; and [Proposed] Order*] <br><br> Date: October 8, 2025 <br> Time: 1:30 p.m. <br> Ctrm: 5C <br><br> Compl. filed: November 22, 2023 <br> Trial Date: None set |

DECLARATION OF LAWRENCE J.H. LIU IN SUPPORT OF PLAINTIFFS' MOTION
TO MODIFY SCHEDULING ORDER AND REOPEN DISCOVERY

# DECLARATION OF LAWRENCE J.H. LIU

I, Lawrence J.H. Liu, declare as follows:

1. I am an attorney licensed to practice before this Court, and counsel at the law firm of FROST LLP ("FROST"), attorneys of record herein for Plaintiffs SHANGJIN CHEN and DANHONG CHEN (together, "Plaintiffs"). I have personal knowledge of the facts stated herein and, if called upon to testify as a witness, I could and would competently testify thereto. I make this Declaration in support of Plaintiffs' Motion to Modify the Scheduling Order and Reopen Discovery.

2. On or around May 5, 2025, Plaintiffs retained my firm, FROST LLP ("FROST"), to substitute in as counsel in the above-referenced matter. Prior to that date, Plaintiffs were represented by Daniel E. Park and Will J. Rios of the law firm Park LLP ("Prior Counsel"). The Court granted our substitution on May 8, 2025. (ECF Nos. 79-82.)

3. Upon retention, FROST has worked diligently to investigate the facts underlying Plaintiffs' claims. We requested all the files from Prior Counsel and started our review immediately in order to amend the Second Amended Complaint ("SAC") in a timely fashion and pursuant to the Court's order granting Defendants Bank of America, N.A. ("BANA") and Merrill Lynch, Pierce, Fenner & Smith Inc.'s ("Merrill") Motion to Dismiss the SAC with leave to amend. (ECF No. 76.)

4. Upon my firm's substitution, I have reviewed the entire case file including discovery responses; email communications between Prior Counsel and counsel for Defendants; and related Court orders and other documents reflecting the procedural history in this matter.

## Defendants' Discovery

5. On July 30, 2024, Defendants Merrill and BANA served a total of six sets of written discovery on Plaintiffs, consisting of Interrogatories, Requests for Admissions (RFAs), and Requests for Production of Documents (RFPs) to each Plaintiff.

6.      On August 27, 2024, Chase separately served a total of four sets of written discovery, consisting of Interrogatories and RFPs to Plaintiffs.

7.      On August 29, 2024, through their Prior Counsel, Plaintiffs served responses to Merrill and BANA's requests.

8.      On September 26, 2024, Plaintiffs served responses to Chase's requests.

9.      On September 30, 2024, Plaintiffs served supplemental responses to BANA and Merrill's requests.

10.     Plaintiffs also produced 77 pages of documents in response to Defendants' Requests for Production, consisting of Plaintiffs' copies of bank statements, police reports, and identification cards.

11.     On August 28, 2024, Chase also served notices to Plaintiffs for their depositions to be held in person on September 23, and 24, 2024, and which also contained additional RFPs.

12.     Plaintiffs served objections to the deposition notices on or around September 13 and 19, 2024, stating that Plaintiffs were based in China and would not be available at the date, time, and location as noticed, however, Plaintiffs would meet and confer on mutually agreeable dates.

13.     In subsequent meet-and-confer emails, Plaintiffs provided available dates in mid-October 2024 for their in-person depositions.

**Plaintiffs' Discovery**

14.     On August 30, 2024, Prior Counsel served Plaintiffs' first sets of written Requests for Production (RFPs), Requests for Admissions (RFAs), and Interrogatories to Defendants BANA, Merrill, and Chase.

15.     On or around September 10 and 11, 2024, Prior Counsel served deposition notices under Rule 30(b)(6) with corresponding RFPs to Chase and BANA, for which depositions were to be held remotely on September 24, and 26.

16.     On September 30, 2024, Defendants served responses to Plaintiffs' discovery requests.

17. In many of their responses to Plaintiffs' RFPs, both BANA and Merrill stated that: "Following entry of a stipulated protective order, [BANA/Merrill] would produce non-privileged documents responsive to this Request following a meet and confer if discovery continues." True and correct copies of BANA and Merrill's written responses to Plaintiffs' RFPs are attached as **Exhibits A and B**.

18. Similarly, Chase responded to a number of Plaintiffs' RFPs that "Following the entry of a protective order, Chase will produce copies of nonprivileged documents that are responsive to the request, relate to Plaintiffs' accounts with Chase and the transactions made or attempted on Plaintiffs' accounts with Chase, are relevant to the parties' claims and defenses, and are within Chase's possession, custody, or control and can be located with a reasonable effort." A true and correct copy of Chase's written response to Plaintiffs' RFP is attached as **Exhibit C**.

### Informal Discovery Conference and Meet-and-Confer

19. On September 26, 2024, the parties appeared before Magistrate Judge Sagar for an Informal Discovery Conference (IDC) to discuss pending issues regarding Plaintiffs' responses to Defendants' discovery requests; Plaintiffs' document requests in connection with their Rule 30(b)(6) deposition notices to Defendants; and Plaintiffs' availability for in-person depositions. Plaintiffs' Prior Counsel represented that the parties would continue to meet and confer and resolve the issues informally. (*See* ECF No. 52.)

20. By September 30, the date of the discovery cutoff, the parties did not reach an agreement on many of the unresolved discovery issues including a stipulation to extend the discovery cutoff.

21. In addition, Defendants provided incomplete and evasive responses to Plaintiff's discovery requests while producing zero responsive documents.

22. After several days of failing to respond to Defendants' counsel, on October 1, 2024, Plaintiffs' Prior Counsel belatedly attempted to continue conferring on discovery issues including Defendants' deficient discovery responses and a

3
DECLARATION OF LAWRENCE J.H. LIU IN SUPPORT OF PLAINTIFFS' MOTION
TO MODIFY SCHEDULING ORDER AND REOPEN DISCOVERY

proposal to extend the discovery cutoff, but Defendants stated that their proposal was withdrawn. A true and correct copy of email thread between Prior Counsel and counsel for Defendants regarding their meet-and-confer on discovery issues is attached as **Exhibit D**.

23. Prior Counsel then unilaterally requested a further IDC on October 7, which was denied without prejudice given that the fact discovery deadline had passed. (ECF No. 51.)

24. To date, no depositions have been taken and Defendants have not produced any documents in response to Plaintiffs' RFPs.

25. Meanwhile, Plaintiffs have supplemented their written responses to Defendants' discovery requests, offered available dates for in-person depositions, and agreed to narrow the scope of document requests in their Rule 30(b)(6) deposition notices to Defendants.

**Plaintiffs' Meet-and-Confer (L.R. 7-3)**

26. On July 8, 2025, my office met and conferred with counsel for Defendants to discuss thoroughly the substance of Plaintiff's intended motion to modify the scheduling order and to reopen discovery.

27. At the time, my office had engaged with Defendants' counsel for several weeks to meet and confer on Plaintiffs' motion for leave to file a Fourth Supplemental and Amended Complaint and in regards to Defendants' responses to Plaintiffs' letters seeking documents under the Electronic Fund Transfer Act (15 U.S.C. 1693f(d) and 12 C.F.R. § 1005.11(d)(1)). (*See* Liu Decl. in Supp. Plfs.' Mot. for Leave at ¶¶ 9-25, ECF No. 90-1.)

28. During the call, I informed counsel for Defendants that Plaintiffs intended to separately move for a motion to reopen discovery once pleadings were set, and I asked if they would stipulate to such relief.

29. Counsel for Defendants stated unequivocally that they would not stipulate to such relief and would oppose Plaintiffs' request to reopen discovery.

**Prior Counsel's Gross Negligence**

30. Upon my firm's substitution in this case and review of the case file, we discovered numerous instances where Prior Counsel had failed to meaningfully prosecute this case; failed to comply with Court orders; missed numerous Court-ordered deadlines; failed to timely conduct written discovery; failed to meet and confer with Defendants' counsel on securing an extension to the discovery cutoff despite multiple efforts by Defendants' counsel to finalize a stipulation; failed to timely compel Defendants' production of documents; failed to adequately analyze Plaintiffs' claims; failed to and deliberately and repeatedly misled Plaintiff clients about the status of the case, their obligations, and the results of the Court's orders.

31. Prior Counsel's mishandling of the case amounted to an extreme departure of any reasonable attorney's standard of care and a reckless disregard of their legal duties, which have severely harmed Plaintiffs' present procedural posture in this case. The Court should find that such actions amounted to gross negligence that should not be imputed to Plaintiffs who have acted reasonably and diligently in finding new counsel.

32. Most notably, after the Scheduling Order was issued on March 5, 2024 (ECF 20-1), Prior Counsel failed to conduct any fact discovery until August 30, 2024, when it served its first sets of discovery on Defendants.

33. Given the fact discovery cutoff on September 30, 2024, coincided with Defendants' 30-day deadline for responses, Prior Counsel failed to allot sufficient time to receive responses from Defendants, meet and confer on any deficient responses or document production, or to file any discovery motions if necessary. *See* Fed. R. Civ. P. 34(b)(2)(A).

34. Indeed, Defendants served responses on September 30, 2024, the last day of discovery, which consisted of blanket, boilerplate objections, and did not produce any documents.

35. Moreover, Prior Counsel belatedly served Rule 30(b)(6) deposition

notices with additional requests for production of documents to Defendants on September 10, 11, and 12, which unilaterally set depositions for September 24, 26, and 27—less than a week before the discovery cutoff.

36. On September 16, counsel for BANA and Merrill emailed Prior Counsel to meet and confer on objections to Plaintiffs' deposition notices, but Prior Counsel did not respond to Defendants' request to meet and confer until a full week later.

37. On September 25, BANA and Merrill filed motions for protective orders regarding their unresolved objections to Plaintiffs' deposition notices. (ECF Nos. 47, 48.)

38. Based on my review of emails provided by Prior Counsel, from September 23, through the September 30th deadline, the parties exchanged emails regarding: (1) Plaintiffs' written discovery responses; (2) Defendants' objections to Plaintiffs' deposition notices and document requests; and (3) Plaintiffs' availability for depositions. In those emails, Prior Counsel inexplicably agreed to supplement Plaintiffs' written discovery responses, withdraw all document requests in connection with the deposition notices, and provide Plaintiffs' availability for in-person deposition. At no point, however, did Plaintiffs address Defendants' written discovery responses that were not yet served and the inevitable need for more time to resolve any deficient responses or improper objections.

39. Prior to the discovery cutoff, the parties engaged in a final Informal Discovery Conference (IDC) before Magistrate Judge Sagar on September 26, 2025. Incredibly, according to the hearing transcript, Prior Counsel represented to Judge Sagar that "the discovery issues have been resolved." (ECF No. 52, 3:13-15, 5:7-11).

40. Further according to the hearing transcript, Judge Sagar informed the parties that because the parties did not jointly request the IDC and there would not be enough time prior to the discovery cutoff for her to resolve the parties' pending discovery issues, she could only encourage the parties to continue to meet and confer to narrow the scope of issues. She emphasized, however, **"if [the parties] are unable**

**to reach an agreement, then it is imperative that they jointly request an extension of time – an extension of the discovery cutoff date or a modification of the Court's scheduling order before Judge Garnett to enable them to raise this issue with the Court."** (ECF No. 52, 6:3-8.)

41. According to the hearing transcript, Prior Counsel inexplicably rejected Magistrate Judge Sagar's suggestions, instead stating **"… rather than, you know, going to a discovery conference or – or filing motions, I believe it's – it's much better to just meet and confer in good faith and try to work it out between the parties."** (ECF No. 52, 8:9-15.)

42. Despite this representation, based on my review of emails, Prior Counsel failed to meet and confer with Defendants' counsel on extending the discovery cutoff and to respond to Defendants' counsel's multiple emails regarding a proposal to extend discovery until after the deadline had already passed.

43. At no point did Prior Counsel ever attempt to secure a *formal* stipulation to extend the discovery cutoff or to seek relief from the deadline even after it had passed. Instead, Prior Counsel misinformed Plaintiff clients that seeking to reopen discovery would not be necessary or helpful.

44. Other examples of Prior Counsel's gross negligence plague the procedural history of this case. Prior Counsel submitted their Opposition to Merrill and BANA's Motion to Dismiss one week late, resulting in the Court's Order reprimanding Plaintiffs for failing to comply with orders and the Local Rules and warning that future violations could result in terminating sanctions. (*See* ECF No. 56.) Prior Counsel's junior associate filed a declaration admitting their mistake. (ECF No. 57.) Prior Counsel's failure to seek an extension of the discovery cutoff also resulted in Defendants' withdrawals of their pending Motions for Protective Order. (ECF Nos. 58, 59.) Notably, Prior Counsel did not even attempt to oppose Defendants' motions to withdraw their pending protective order motions, which were subsequently granted by the Court. (ECF No. 61.)

45. On December 11, 2024, Prior Counsel's junior associate executed a Stipulation to dismiss Plaintiff Danhong's claims against Chase in their entirety with prejudice based on the fact that she was not an accountholder for Chase and did not maintain any claim against Chase. (ECF No. 68.)

46. The Stipulation and Proposed Order that were drafted by Chase's counsel was vaguely worded, and did not provide any explanation for the dismissal of Plaintiff Danhong's claims with prejudice. Most importantly, it failed to clarify that Plaintiff Shangjin, who was the actual Chase accountholder, intended to preserve his claims against Chase. (ECF Nos. 68, 70-1.)

47. This resulted in the Court's confusion that Chase had been dismissed completely from the case, which required Plaintiffs to clarify in their TAC that Shangjin had not in fact dismissed his claims against Chase. (ECF No. 76, n.3; ECF No. 83, n.4.)

48. Finally, on April 24, 2025, despite knowing that Plaintiffs had not yet secured new counsel to represent them and that there was a pending deadline for Plaintiffs to file the TAC by May 12, 2025 (ECF No. 76), Prior Counsel prematurely abandoned the case, informing Plaintiffs by email that they were withdrawing from representation and providing them a link to access Prior Counsel's case file (that was incomplete).

49. In this final April 24, 2025 email to Plaintiffs, Prior Counsel provided a misleading case summary to convey to their future counsel. In particular, Prior Counsel lied about the true import of the Order granting BANA's Motion to Dismiss the SAC, stating that "the news is generally positive," "the lawsuit remains alive," and that the Order "narrows the focus of the case allows us to concentrate our efforts on the strongest, surviving causes of action." Prior Counsel intentionally obscured the fact that the Court had repeatedly found serious deficiencies in the pleadings that they had prepared, and that each dismissal order had severely lessened their chances of any recovery.

50. Prior Counsel also lied to Plaintiff clients that despite the discovery deadline having passed, their new counsel could file a motion to compel Defendants to produce documents. The Court's Scheduling Order explicitly refutes this, stating: "The cut-off date for discovery is not the date by which discovery requests must be served; it is the date by which all discovery, including all hearings on any related motions, must be completed." (ECF No. 20, § I.A.1.)

51. Based on my review of the record and communications, Prior Counsel deliberately misled Plaintiff clients and deprived them of the opportunity to take action to preserve their rights. Prior Counsel explicitly misrepresented to Plaintiff clients that the case was proceeding properly, when it was clearly not.

52. Upon my firm's retention in this matter on May 5, 2025, we reviewed the case file that was provided to Plaintiffs from Prior Counsel. The case file, however, was incomplete and required us to identify numerous missing documents and follow up repeatedly with Prior Counsel to obtain them.

53. Moreover, despite knowing that Plaintiffs' deadline to file the TAC was May 12, 2025, and that Plaintiffs were still in the process of finding new counsel, Prior Counsel effectively abandoned Plaintiff clients after April 24th and did not undertake any work on the TAC following the Court's Order on April 21st. (ECF No. 76.) Thus, upon my firm's substitution in this case, we were required to immediately obtain a stipulation by Defendants to extend the deadline for Plaintiffs' TAC, which the Court granted on May 12. (ECF No. 82.)

*    *    *

54. In response to Plaintiffs' letter dated June 17, 2025, which requested documents under the EFTA, Chase provided just three months' of Plaintiff Shangjin's bank statements (12 pages) on July 24, 2025.

55. BANA and Merrill have thus far refused to provide any documents in response to Plaintiffs' demand letters.

56. Following the Court's denial of the latest Motion to Dismiss (ECF No.

99) and BANA's filing of its Answer to the TAC (ECF No. 103), the parties are currently meeting and conferring on proposed new trial and pretrial dates.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on this 4th day of September, 2025, at Los Angeles, California.

_____
Lawrence J.H. Liu