CHRISTOPHER FROST (SBN 200336)
chris@frostllp.com
LAWRENCE J.H. LIU (SBN 312115)
lawrence@frostllp.com
BENJAMIN GRUSH (SBN 335550)
bgrush@frostllp.com
KEVIN SALMASSY (SBN 357161)
kevin1@frostllp.com
FROST LLP
10960 Wilshire Boulevard, Suite 2100
Los Angeles, California 90024
Telephone: (424) 254-0441
Facsimile: (424) 600-8504

Attorneys for Plaintiffs SHANGJIN
CHEN and DANHONG CHEN

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| SHANGJIN CHEN, an individual; and DANHONG CHEN, an individual,<br><br>Plaintiffs,<br><br>vs.<br><br>JPMORGAN CHASE BANK, N.A., a New York corporation; BANK OF AMERICA, N.A., a Delaware corporation; MERRILL LYNCH, PIERCE, FENNER & SMITH INC., a Delaware corporation; and DOES 1 through 10, inclusive,<br><br>Defendants. | Case No. 2:23-cv-10874-SPG-AS<br><br>*Hon. Sherilyn Peace Garnett*<br><br>**DECLARATION OF SHANGJIN CHEN IN SUPPORT OF PLAINTIFFS' MOTION TO MODIFY SCHEDULING ORDER AND REOPEN DISCOVERY**<br><br>[*Filed concurrently with Plaintiffs' Notice of Motion; Memorandum of Points and Authorities; Declaration of Lawrence J.H. Liu; and [Proposed] Order*]<br><br>Date:<br>Time:<br>Ctrm:   5C<br><br>Compl. filed:      November 22, 2023<br>Trial Date:         None set |

55753.1

1

## <u>DECLARATION OF SHANGJIN CHEN</u>

I, Shangjin Chen, declare as follows:

1.    I am a named plaintiff in this case and have personal knowledge of the facts stated herein and, if called upon to testify as a witness, I could and would competently testify thereto. I make this Declaration in support of Plaintiffs' Motion to Modify the Scheduling Order and Reopen Discovery.

### <u>Background</u>

2.    My sister Danhong Chen and I are victims of a sophisticated identity theft and banking fraud scheme that occurred from October 2022 through May 2023.

3.    In or around 2012, my sister and I each opened separate deposit (checking and savings) accounts at Bank of America, N.A. ("BANA").

4.    In or around October 2022, upon the advice of BANA representatives, I also opened a Cash Management Account (CMA) with BANA's subsidiary, Merrill Lynch, Pierce, Fenner & Smith Inc. ("Merrill"), which I used to purchase three Certificates of Deposits (CDs).

5.    Beginning in or around October 2022, my bank accounts at Bank of America, N.A. ("BANA") and JPMorgan Chase, N.A. ("Chase"), as well as my cash management account at Merrill were compromised. Apparently, someone had gained access to my bank accounts and had changed the login credentials and contact information without my knowledge or authorization.

6.    I was not immediately aware of the fraudulent activity that occurred on my accounts as I was residing primarily in China at the time and rarely used my U.S. bank and brokerage accounts that I maintained primarily for passive savings and investment purposes. I very rarely used my BANA and Chase accounts for making purchases, except mostly to buy gas and groceries whenever I am in the U.S.

7.    In April 2023, Danhong contacted me to inform me that someone had transferred out all the funds from her BANA checking and savings account without her knowledge or authorization to a newly opened Merrill CMA that was held jointly under

2

our names. I confirmed to her that I was unaware of this new joint Merrill CMA and that I had not opened it nor authorized any transactions on the account.

8.      After learning of the news, I attempted to access my BANA accounts and discovered that the login credentials had all been changed without my knowledge or authorization. I also had not received any statements or notices for many months.

9.      I returned to the U.S. as quickly as possible in May 2023 to review my recent account activity and report the potential fraud to my local Bank of America retail branch in Santa Anitia, Arcadia, California, which was also where I had initially opened my BANA bank accounts and Merrill brokerage account.

10.     Upon reviewing my account statements with BANA and Merrill's representatives, I discovered that someone had made a series of unauthorized payments and transfers of funds from each of my BANA checking and savings accounts, as well as my Merrill brokerage account beginning in October 2022. For my Merrill CMA, the fraudster had sold my three CDs shortly after I had opened the account and had transferred out all the liquid funds from that account without my knowledge or authorization. I immediately reported these transactions as fraudulent to my BANA and Merrill representatives, including my account manager Jimmy Zhou.

11.     Based on my current knowledge, information, and belief, the total amount of the fraudulent transactions made on my BANA checking and savings accounts was at least $497,505.58, and the total amount of fraudulent transactions made on my Merrill accounts was approximately $676,000.00.

12.     After this shocking discovery, I filed a police report with the Arcadia Police Department on May 25, 2023. A true and correct copy of the police report was attached as Exhibit 7 to the Third Amended Complaint that was filed in this case on June 2, 2025.

13.     During my follow-up visits with BANA and Merrill, I was informed by their representatives that they had reviewed video footage of the fraudster opening the joint Merrill account under my sister's name at a BANA retail center. They informed

me that the footage and their investigation revealed that an individual—male—used a fake ID bearing Danhong's name to open up the fraudulent joint Merrill cash management account. I repeatedly requested more information, including documents relating to the investigation but was refused without any further explanation.

14.    Around the same time in May 2023, I tried to access my Chase accounts to review any potential fraudulent activity. I discovered that the credentials were also changed without my knowledge or authorization and that I was locked out of the accounts. Similarly, I had not received any statements or notices regarding my Chase accounts for many months.

15.    In May 2023, I also visited my local Chase branch to review my account activity and confirmed that my Chase accounts had also been compromised, with a series of unauthorized transactions having similarly taken place since October 2022. I immediately reported these transactions to my Chase representative, Frank Lu. I repeatedly requested more information from Chase regarding their investigation into these fraudulent transactions, but they also refused my requests without any explanation.

16.    Based on my current knowledge, information, and belief, the total amount of fraudulent transactions made on my Chase accounts was approximately $118,900.00.

17.    Meanwhile, based on my current knowledge, information and belief, the total amount of fraudulent transactions made on Danhong's BANA accounts was approximately $438,883.96.

18.    Based on my current knowledge, information and belief, the fraudster had withdrawn or transferred a combined total of $1.7 million from the accounts held by me and Danhong.

19.    To date, none of the Defendants BANA, Merrill, or Chase have fully reimbursed either me or my sister for the unauthorized transactions on our accounts. In addition, despite my repeated inquiries, Defendants have not provided any satisfactory

explanations as to why I was not entitled to full reimbursements or any additional information regarding the conclusions they reached from their investigations.

### My Prior Counsel's Gross Negligence

20.    On or around October 2023, Danhong and I retained Daniel E. Park of Park LLP ("Prior Counsel") to assist us with recovering our lost funds from the series of fraudulent transactions that occurred on our accounts. Mr. Park represented to us that he could easily handle the matter and assured us that he would recover our lost funds plus attorney's fees in one year or less.

21.    Danhong and I are Chinese nationals with limited English proficiency. We have never been part of any U.S. litigation proceeding and deeply lack familiarity and understanding of the U.S. legal system, including federal court procedures. Further, we reside primarily in China and return to the U.S. only occasionally. Due to time zone differences and language barriers, we often relied on Prior Counsel's representations regarding the status of the case and any obligations we had to perform.

22.    Throughout the history of our communications with them, Prior Counsel always characterized their efforts and procedural developments as "winning," "successful," and "good news," which I now know to be false. After we engaged our current counsel FROST LLP, we learned that Prior Counsel missed significant deadlines including for fact discovery and had repeatedly lost on Defendants' multiple motions to dismiss, which have severely and negatively impacted our case.

23.    Throughout our engagement, Prior Counsel continuously misled us to believe the case was going smoothly as planned. Prior Counsel informed us generally that no active participation was required from me and Danhong, except to provide information for preparing the pleadings and discovery responses and our available dates for in-person depositions in October 2024.

24.    Although we provided everything they asked for including our plans to travel to the U.S. for depositions, our depositions ultimately did not go forward because Prior Counsel failed to negotiate an extension to the discovery deadline in time. Yet,

Prior Counsel repeatedly assured us that they was actively and timely conducting discovery on Defendants, and that we would have all the evidence we needed to win our case.

25.    At the time, we had no reason to believe Prior Counsel's representations were false. Therefore, throughout the earlier part of the case, we always deferred to Prior Counsel's expertise and relied on their repeated false assurances that the case was going smoothly. Prior Counsel, however, never asked for our input on any strategy decisions or substantive issues in our case, and instead they only told us from time to time what they had done, were doing, or planned to do in the case.

26.    Prior Counsel often failed to provide me and Danhong with copies of Court filings and failed to explain the meaning behind these filings as they occurred. We never saw or had an opportunity to review and comment on the written discovery requests prepared by Prior Counsel before they were served on August 30, 2024.

27.    Prior Counsel also never explained the legal claims or theories that were asserted in our pleadings before filing them on our behalf. We did not understand some of the specific causes of action that were asserted and why Prior Counsel had asserted them. Prior Counsel did not explain the bases behind these claims and reasons for asserting them.

28.    Upon our careful review of the pleadings with our new counsel, we also discovered that Prior Counsel made many mistakes, such as:

a.    alleging that both Danhong and I had each opened an account at Merrill that included the fraudulent joint Merrill CMA (account no. ending in -77J26) (ECF No. 1-1 [Compl. ¶ 17]), when in fact Danhong never opened any Merrill account and the joint Merrill CMA was opened not by us, but a male fraudster that had impersonated her;

b.    alleging that Danhong and I were residents of Los Angeles County at all relevant times (ECF No. 39 [SAC ¶¶ 6, 7]), when in fact Danhong and I were both residing in China when the fraudulent transactions took place; and

55753.1

6

c.    alleging that I had discovered the fraud on my Chase account in November 2022 and reported it to Chase (ECF No. 39 [SAC ¶ 28]), when in fact I did not discover the fraud on my Chase account until May 2023 after learning that my BANA accounts had been compromised, and had reported it to Chase in May 2023.

29.    Although we had correctly explained these facts to Prior Counsel multiple times, we do not know why Prior Counsel made these incorrect factual allegations in the earlier pleadings. Prior Counsel also never attempted to clarify with us any questions they had on these alleged facts before filing the pleadings, which we would have done.

30.    Danhong and I were never informed by Prior Counsel of the significance of the discovery process and that the discovery deadline was September 30, 2024, until we received an email update from them on September 13, 2024. In that email, Prior Counsel misinformed us that they had "taken proactive steps by serving discovery" and that such written discovery would be sufficient to "hold the banks accountable." Prior Counsel, however, did not include a copy of the March 5, 2024 Pretrial Scheduling Order (ECF No. 20-1).

31.    On March 6, 2025, we asked Prior Counsel to see the documents that were requested from Defendants. On or around March 24, 2025, Prior Counsel responded informing us that although they had requested documents from Defendants before the discovery cutoff, Defendants had not produced any.

32.    In their email chain response to us on or around March 24, 2025, Prior Counsel attached an incomplete *screenshot* of the Court's March 5, 2024 Pretrial Scheduling Order (ECF No. 20-1), which we saw for the first time. Prior Counsel never informed us that the Scheduling Order set other strict deadlines for motions (such as for leave to amend) that required direction and input from me and Danhong. Importantly, Prior counsel never explained the importance of meeting these deadlines, the work that we had to undertake to ensure we were actively building our case, and the consequences that would result if we failed to meet the deadlines.

55753.1

7

33.    Prior Counsel did not inform us that because they had only began serving discovery on August 30, 2024—which was 30 days before the discovery deadline, they had thus failed to allow us enough time to resolve any discovery disputes with Defendants and to ensure that we obtained the necessary information and documents to support our case. Prior Counsel also did not inform us that they had ample time and opportunity to seek an extension to the discovery deadline but failed to do so, which I only learned after retaining my new counsel who explained it to me.

34.    Prior Counsel also did not provide any substantive analysis of the claims asserted in the pleadings nor elicit any input on strategy from me or Danhong. As such, we were unable to stay adequately informed and involved. Instead, Prior Counsel falsely assured us time and time again that they would recover our lost money from Defendants in a matter of months and that our input or involvement was generally not needed.

35.    After learning that Prior Counsel had failed to obtain documents from Defendants before the discovery deadline, Danhong and I began to suspect that Prior Counsel was mishandling the case. We requested an update on Defendants' document production, to which Prior Counsel informed us for the first time that Defendants had not produced any documents and that the discovery deadline had already passed. After the fact discovery deadline had passed and Prior counsel admitted that they were unbale to obtain documents from Defendants, Prior Counsel also lied to us stating that documents and other evidence from Defendants would not be necessarily helpful anyway. After learning this, Danhong and I began seeking new counsel to take over the case and informed Prior Counsel of our intent.

36.    On April 24, 2025, despite knowing that we had not yet found new counsel to represent us and that there was a pending deadline for Plaintiffs to file a Third Amended Complaint by May 12, Prior Counsel prematurely abandoned our case. Mr. Park informed us by email that they were withdrawing from our case and provided

55753.1

8

DECLARATION OF SHANGJIN CHEN IN SUPPORT OF PLAINTIFFS' MOTION
TO MODIFY SCHEDULING ORDER AND REOPEN DISCOVERY

1   us a link to access our case file, as well as a brief summary of the case status for us to

2   convey to our future counsel.

3         37.    In this email, Prior Counsel lied to us about the true meaning of the April

4   21st Order granting BANA's Motion to Dismiss the Second Amended Complaint,

5   stating that "the news is generally positive," "the lawsuit remains alive," and that the

6   Order "narrows the focus of the case allows us to concentrate our efforts on the

7   strongest, surviving causes of action." But Prior Counsel deliberately covered up the

8   important negative facts, such as that the Court had repeatedly found serious

9   deficiencies in the pleadings that Prior Counsel had prepared, and that each dismissal

10   order had severely lessened our chances of any recovery. Prior Counsel also

11   misinformed us that despite the discovery deadline having passed, our new counsel

12   could file a motion to compel Defendants to produce documents that were requested in

13   the discovery requests that Prior Counsel served on August 30, 2024.

14         38.    Throughout their engagement with us, Prior Counsel deliberately misled

15   us and deprived us of the opportunity to take action to preserve our rights. Prior

16   Counsel repeatedly misrepresented to us that the case was proceeding properly, when

17   it was clearly not. This severely impaired our ability to make any informed decisions

18   about the case as we did not understand what was going on and did not know that the

19   Court had made several significant rulings against us.

20         39.    Ever since our concerns and suspicions about Prior Counsel's

21   mishandling of our case first arose in March 2025, we have increased our diligence,

22   including retaining our current counsel FROST LLP on May 5, 2025. We have stayed

23   in constant communication with our new counsel to ensure that we are well informed

24   and involved in every aspect of this case. We are also able to communicate more

25

26

27   ///

28

55753.1

9

DECLARATION OF SHANGJIN CHEN IN SUPPORT OF PLAINTIFFS' MOTION
TO MODIFY SCHEDULING ORDER AND REOPEN DISCOVERY

1  effectively with our new counsel, Lawrence Liu of FROST, who can speak and
2  understand Chinese.

3       I declare under penalty of perjury under the laws of the United States of
4  America that the foregoing is true and correct.

5       Executed on this 03 day of September, 2025, at Dongyang City, Zhejiang
6  Province, China.

7

8                                                    Shangjin Chen

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28